THE BILL POSTING SIGN COMPANY v. ATLANTIC CITY.

Argued February 17, 1904—Decided June 13, 1904.

1. An ordinance which forbids the erection of signs upon private property in Atlantic City, without regard to whether such signs may be dangerous to public safety, is invalid, because it is an attempt to appropriate private property to public use without compensation.

2. The statute requires an ordinance to be read three times before it is passed. The reading of its title is not a reading of the ordinance where the title does not express its object. In legislative acts the title of such acts must express their purposes.

3. If the ordinance in this case was valid, *certiorari* of the ordinance would not be the appropriate remedy to restrain a mere.threat to remove the sign from the premises of the prosecutor.

On *certiorari.*

Before Justices VAN SYCKEL and FORT.

For the prosecutors, *Albert De Unger* and *Thompson & Cole.*

For the defendant, *Harry Wootton.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The writ in this case certifies into this court an ordinance of Atlantic City, of which the first section reads as follows:

"SECTION 1. *Be it ordained by the City Council of Atlantic City.* That on and after the passage of this ordinance it shall be unlawful to erect or place any fence, billboard, sign or other structure used for the purpose of displaying advertisements within the limits of Atlantic City; *provided, however,* that no part of this section shall apply to any signs or advertisements permitted by the subsequent sections of this ordinance."

The prosecutor was notified to remove its sign, and that the city would do so if it did not.

The act of 1902 (*Pamph. L., p.* 296, § 15) gives the city council power to make ordinances, not contrary to the laws of this state or of the United States, as they may deem necessary for good government and the preservation of public health and prosperity.

The act of 1903 (*Pamph. L., p.* 513) provides that it shall be lawful for the common council of any city, by ordinance, to regulate the size, height, location, position and material

of all signs, billboards and advertisements erected within the city limits, and to provide for the manner of securing and fastening the same, and the removal, change and alteration thereof.

1. While it may be conceded that in the exercise of the police power the right may be granted to municipalities to control the erection of signs where the public safety requires it, a statute which purports to give unlimited power to regulate the erection of signs on private property, would be an attempt to authorize the appropriation of private property to public use without compensation, and therefore inimical to our constitutional provision. *People* v. *Green*, 85 *App. Div.* (*N. Y.*) 400.

The recognition of a power so wide would bestow upon the lawmaker the right to invest cities with authority to control the size and style of buildings which should be erected upon private property where the public safety was in nowise involved.

In *Matter of Application of Jacobs*, 98 *N. Y.* 98, it was unanimously resolved by the Court of Appeals that such general power could not be given to cities, and that it was for the courts to determine in every case whether, in the reasonable exercise of the police power, the action of the city could be upheld.

Many cases are cited in support of this decision.

In *City of Rochester* v. *West*, 164 *N. Y.* 510, the ordinance relating to billboards was sustained on the ground that it was obviously intended to provide for the public safety.

There is nothing in the sections of the Atlantic City ordinance, subsequent to the one above set forth, which shows that it was passed to guard against any public danger or injury which may be suppressed in the exercise of the police power, nor is there anything to show that the prohibited sign could in any respect be dangerous to the public.

The ordinance is too sweeping and must be set aside as unreasonable and void, in so far as it authorizes interference with the prosecutor's property in this case.

It may be well to observe that if the ordinance was valid,

and the infirmity was in the attempt to put it in force, *cerliorari* would not be the appropriate remedy to restrain a mere threat to remove the sign.

2. The ordinance, to be legal, must have been read three times before it could be passed.

It was read the first time by its title, which is not a compliance with the statute (*Pamph. L.* 1902, *p.* 284, § 11), where the title does not fairly express its object.

In legislative acts the title of such acts must express their purpose, and the information to be given by the reading of the act is imparted by reading the title.

Where the title of an ordinance discloses its object, the reading of the title is equivalent to reading the ordinance. *Anderson* v. *Camden,* 29 *Vroom* 505.