LACLARE L. WELSH, PROSECUTOR, v. THE TOWN OF MOR-
RISTOWN ET AL., DEFENDANTS.

Argued June 6, 1923—Decided July 20, 1923.

1. An ordinance enacting that no automobile or other vehicle shall
be parked or allowed to stand for a longer time than is necessary
to take on and let off passengers or baggage, and in no case
longer than two minutes, in a designated public place, is, under
present-day conditions, a "regulation of traffic."

2. The town of Morristown has authority by virtue of its municipal
and contractual powers, by ordinance to enact that no automo-
bile or other vehicle shall be parked or allowed to stand for a
longer time than is necessary to take on and let off passengers
or baggage, and in no case longer than two minutes, in a desig-
nated part of a public driveway girdling a railroad station where
the railroad company owning the fee had expressly granted to the
town the right to regulate traffic. The town has power to enact
such ordinance even though the railroad company, before the
passage thereof, had granted to the prosecutor, a taxicab man,
the exclusive right to solicit business on its station grounds and
the exclusive privilege of parking vehicles at the place in ques-
tion. Such ordinance, resting both on general municipal power
and on the provisions of a track elevation contract (antedating
that of the prosecutor) between the town and the railroad com-
pany (no question of lack of notice to the prosecutor being
raised), does not deprive the prosecutor of his property without
due process of law, nor take his property for public use without
just compensation, nor deny him the equal protection of the
laws.

On *certiorari*, &c.

Before Justices TRENCHARD, PARKER and BERGEN.

For the prosecutor, *Maximilian M. Stallman.*

For the defendants, *Nathaniel C. Toms* and *Conover
English.*

The opinion of the court was delivered by

TRENCHARD, J. This writ brings up an ordinance of the
town of Morristown entitled "An ordinance to regulate
traffic on the driveway lying on the east side of the shelter-

house of the Delaware, Lackawanna and Western Railroad Company in Morristown, extending from the American railway express office to Lackawanna place." It ordains that—

"1. No automobile or other vehicle, either private or that which may be engaged in the transportation of passengers for hire, shall be parked or shall be allowed to stand for a longer time than is necessary to take on and let off passengers, expressage or baggage, and in no case for longer than two minutes, along the curb on the westerly side of the driveway mentioned in the title of this ordinance from the southerly side of the entranceway to the shelter-house or the tunnel leading under the depot, northerly to the turn of said driveway under the railroad.

"2. No automobile which may be engaged in the transportation of passengers for hire shall be so parked or so allowed to stand as prohibited in section 1 hereof on the remaining part of the westerly side of said driveway."

A penalty for violation is prescribed in the ordinance.

The status of the prosecutor is that he has a contract with the railroad company to furnish exclusive taxicab service at the station. That contract was entered into before the ordinance in question was passed. By it the company states its desire to regulate cab service and grants to the prosecutor "the exclusive right to solicit business as a cabman" on its station grounds and "the exclusive privilege of parking vehicles employed in said cab service when not in actual use in the spaces shown in green on the blueprint map hereto attached." One of such spaces is that described in the ordinance.

No question is raised with respect to the passage of the ordinance, nor is it challenged as an unreasonable exercise of municipal powers. Of the four reasons assigned by the prosecutor, the first is generally that it is beyond the power of the town to enact, and the other three rest on constitutional grounds, viz., that it deprives the prosecutor of his property without due process of law—takes his property for public use without just compensation and denies him the equal protection of the laws.

As we have seen, the ordinance in form and substance is on its face aimed at the regulation of vehicular traffic at the railroad station at a particular place in the driveway lying on the east side of the shelter-house of the railroad company extending from the American railway express office to Lackawanna place.

The town claims the right to enact this ordinance generally by virtue of its police power to regulate traffic in public places, and specifically by virtue of a contract with the railroad company made in 1912 and relating to the elevation of the station and tracks so as to avoid grade crossing. This contract was entered into by virtue of the various enabling statutes in that regard, particularly the act of 1901. *Pamph. L., p.* 116; *Comp. Stat., p.* 4266. It provides for a change in the station approaches partly by a new street to be laid out and made by the town and partly by a roadway built by the company. The general scheme as carried out resulted in a driveway girdling the station consisting in part of a plaza (the driveway in question) connected at its north end with Morris street (a main highway) by a roadway built by the company, and at the south end through the new street called Lackawanna place, a dedicated public street. The contract declared that "said driveway [which is the subject of the ordinance] shall be kept open at all times for passengers, pedestrians, carriages, wagons, automobiles and general vehicular traffic to and from the station grounds on the easterly side of said railroad and for the use of those now having rights of egress to Morris street in Saw Mill lane, but this contract shall not be construed as a dedication of said driveway as a public highway." It thereby and otherwise appears that the driveway in question was and is devoted to public use, although the fee thereof remained in the railroad company.

This track elevation contract also contains this broad and significant language: "It is further agreed that the town may and shall exercise all necessary police powers in and upon the station, station grounds, approaches and driveways, for the purpose of regulating foot and vehicular traffic at said

station, and for the enforcement of the rules and regulations of the railroad companies in respect thereto."

In our opinion that is a plain declaration that the foot and vehicular traffic at the station and in the station driveways is to be regulated by the town, and we have no doubt an ordinance enacting that no automobiles or other vehicles shall be parked or allowed to stand a longer time than is necessary to take on and let off passengers or baggage, and in no case longer than two minutes, is, under present-day conditions, a regulation of traffic.

By the contract with the prosecutor, as we have pointed out, the company undertook, in derogation of the control granted by the contract with the town, to establish a parking stand directly in one of the main driveways girdling the station, and where the town authorities might well say it is an obstruction and a nuisance.

For reasons presently to be stated, we deem the ordinance within the municipal and contractual powers of the town.

We think that the prosecutor, in contracting with the company, did so subject to the town's rights generally, and specially under the contract of 1912, and cannot override them. No question of lack of notice on his part is raised.

There can be no doubt that the town has power by ordinance to regulate traffic when reasonably necessary for public safety and good order, and to enact that no automobile or other vehicle shall be parked or allowed to stand for a longer time than is necessary to take on and let off passengers or baggage, and in no case longer than two minutes, in a designated public place. See the charter powers (*Pamph. L.* 1865, p. 819; *Pamph. L.* 1866, p. 427) and Home Rule act (*Pamph. L.* 1917, p. 358). See, also, *Belmar* v. *Barkalow,* 67 *N. J. L.* 504; *Combs* v. *Lakewood,* 68 *Id.* 582; *Atlantic City* v. *Brown,* 72 *Id.* 207, and *Irwin* v. *Atlantic City,* 90 *Id.* 99.

It is equally clear that the contract between the prosecutor and the railroad company did not deprive the town of the power which it had to enact the ordinance in question and to regulate traffic on the driveway. As we have pointed out, the

public generally had the right to use the driveway in ques-
tion, and the town had authority, not only by virtue of its
police power, but by express grant from the railroad company
owning the fee, to regulate traffic thereon. The town had
power to enact the ordinance, even though the company, be-
fore the passage thereof, had granted to the prosecutor, a
taxicab man, the exclusive right to solicit business on its sta-
tion grounds, and the exclusive privilege of parking vehicles
at the place in question. Such ordinances (no question of
lack of notice to the prosecutor being raised) does not de-
prive the prosecutor of his property without due process of
law, nor take his property for public use without just com-
pensation, nor deny him the equal protection of the laws.
Avowedly, the ordinance was enacted in the exercise of the
police power. Every citizen holds his property subject to
the proper exercise of this power, either by the legislature di-
rectly or by public or municipal corporations to which the
legislature may delegate it. It is well settled that laws and
regulations of this character, relating to the comfort, health,
convenience, good order and general welfare of the inhabit-
ants, though they may disturb the enjoyment of individual
rights, are not unconstitutional, though no provision is made
for compensation for such disturbances. They do not appro-
priate private property for public use, but simply regulate its
use and enjoyment by the owner. If he suffers injury, it is
either *damnum absque injuria,* or, in theory of the law, he is
compensated for it by his sharing the general benefits which
the regulations are intended and calculated to secure. *Dill.
Mun. Corp.* 555, § 301; *Munn* v. *Illinois,* 94 *U. S.* 113. The
question here is not precisely the right of the railroad com-
pany to make the contract with the prosecutor for the exclu-
sive parking privilege. The prosecutor relies mainly upon
the case of *Thompson's Express Co.* v. *Mount,* 91 *N. J. Eq.*
497. But that case is not in point. There the only part of
the railroad company's property which was involved was the
platform of the Lakewood station, upon which no one had a
right other than passengers or others having business with
the railroad; whereas, here, the public generally have the

right to use the driveway. Whatever right may have been conferred upon the prosecutor by his contract with the railroad company, such contract must be deemed to have been entered into in view of, and in subordination to, the right of the town authorities to exercise the power to regulate traffic. The law silently incorporates itself into the contract of the parties. They could not have contemplated that the municipal authorities would never exercise the power with which they were clothed to regulate traffic, nor is it to be presumed that they intended any embarrassment or diminution of the power when exercised. The more reasonable presumption is that it was intended that any unlimited parking privileges conferred should not endure if they came in conflict with the regulations ordained by the town authorities in the valid exercise of a power intended for the promotion of good order and deemed necessary for the public benefit. *Lindsey* v. *Anniston,* 104 *Ala.* 257; 16 *So. Rep.* 545; *Seattle* v. *Hurst,* 97 *Pac. Rep.* 454.

The writ will be dismissed, with costs.