## DELAWARE, L. & W. R. CO. v. MAYOR AND BOARD OF ALDERMEN OF TOWN OF MORRISTOWN.

(Circuit Court of Appeals, Third Circuit. March 26, 1926. Rehearing Denied September 3, 1926.)

No. 3391.

1. Constitutional law ⬤⟹280—Eminent domain ⬤⟹69—Neither private property nor any of its essential attributes may be taken for public use without due process of law and just compensation.

Private property may not be taken for public use without due process of law and just compensation, nor may an owner be deprived of any essential attributes in his property without like process and compensation.

2. Constitutional law ⬤⟹252—Eminent domain ⬤⟹86.

Property of railroad company is private property, and entitled to constitutional protection, like other private property, against taking without [due process and] compensation.

3. Eminent domain ⬤⟹2(1)—Every citizen holds his property subject to exercise of police power and deprivation of enjoyment of property from such circumstances is not taking of private property for public use.

Every citizen holds his property subject to proper exercise of police power of state Legislature, directly or by public or municipal corporations, and deprivation of enjoyment of property under such circumstances is not, within meaning of Constitution, a taking of private property for public use, but simply a regulation of its use and enjoyment by the owner.

4. Constitutional law ⬤⟹277(1)—Eminent domain ⬤⟹2(1)—Private property devoted to public use ceases to be juris privati and is affected with public interest and subject to public regulation, injury from which is damnum absque injuria, or, in the theory of law, compensated by sharing general benefit.

Private property devoted to public use, as that of common carrier ceases to be juris privati only, and is affected with a public interest, and is subject to public regulation, injury from which is either damnum absque injuria, or, in the theory of law, is compensated by sharing general benefits which regulations confer.

5. Constitutional law ⬤⟹253—Eminent domain ⬤⟹2(1)—Test whether law in its effect on enjoyment of property is taking of property without due process and just compensation depends on whether law was reasonable exercise of police power.

Test of whether law, in its effect on enjoyment of property, is taking of property without due process and just compensation, depends on whether enactment of law was reasonable exercise of police power and justified by public necessities, or was unreasonable and arbitrary.

6. Carriers ⬤⟹16—Ordinance establishing cab stand at railroad station held not unreasonable exercise of police power.

Municipal ordinance creating cab stand on railroad property at station used daily by 3,000

people held not an unreasonable exercise of police power, as tending toward good order and public safety.

7. Carriers ⬤⟹14—Town is not deprived of power to establish cab stand at railroad station because of contract of railroad company with private individual, granting exclusive license for stand.

Contract of railroad company, granting to private person exclusive license for taxicab stand at station, did not deprive town of power to enact ordinance establishing stand at same place, since the driveway was devoted to a public use.

8. Carriers ⬤⟹16—Under contract with railroad company, authorizing town to regulate traffic at station, as well as by reason of fact that railroad had affected its property with public interest, town had authority to establish cab stand.

Where railroad company by contract had authorized town to exercise necessary police powers for regulating foot and vehicular traffic at station, town was authorized to enact ordinance establishing cab stand, not only under such contract, but also by reason of fact that railroad company, by devoting its property to public use, had affected it with public interest.

Buffington, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Bill by the Delaware, Lackawanna & Western Railroad Company against the Mayor and Board of Aldermen of the Town of Morristown. From a decree granting a permanent injunction, defendants appeal. Reversed, with directions.

N. C. Toms, of Morristown, N. J. (Conover English, of Newark, N. J., of counsel), for appellants.

M. M. Stallman, of Newark, N. J., and John L. Seager, of New York City, for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a final decree of the District Court declaring an ordinance of the town of Morristown, N. J., designating a taxicab stand on property belonging to the railroad company near the station, unconstitutional, and enjoining the town from enforcing the ordinance and Henry Laden and 16 other taxicab drivers from entering upon the property of the company at or near its passenger station for the purpose of soliciting custom or patronage, and from standing or parking their taxicabs and vehicles upon the station grounds of the company.

The company operates a railroad from

New York City through Morristown, to Buffalo, N. Y. The land in question was leased in 1868 by the company, which handles about 3,000 passengers daily in and out of Morristown. The tracks and station are flanked on both sides by areas and driveways for ingress to and egress from the station. The tracks of the company through Morristown were formerly at grade, but on September 24, 1912, the company and the town entered into a contract in accordance with which the tracks were elevated. This contract defined the relative rights and duties of the parties in respect to the elevation of the tracks. It provided, inter alia, that "each and every of the acts and things to be done and performed by each of the parties hereto is essential consideration for the acts and things to be done and performed by the other party, and that each of the terms of this contract is a necessary and proper part of the work of improvement herein provided for."

The contract was admittedly performed by both parties. The company in its contract agreed to lay out the driveway where the parking place, designated in the ordinance, is now located. The main station building is on the west side of the tracks, and a roofed-over platform is on the east side, and constitutes what is called a "shelter house." There is a driveway on the easterly side of the shelter house, and the cab stand is along the curb of the driveway just north of the shelter house. This same place was designated as a cab stand by Mayor Tood shortly after the tracks were elevated, pursuant to the contract between the town and the company of September 24, 1912, and had been so used until December 28, 1922, when the railroad company entered into a contract with La Clare L. Welsh, whereby it purported to give him the exclusive right of parking taxicabs at the old cab stand, and of soliciting business as a cabman on the station grounds.

The railroad company filed a bill in the Court of Chancery of New Jersey, and obtained from it an order enjoining taxicab drivers from parking their cabs on the property of the company, including the cab stand and driveway. The town then by ordinance established a parking place just south of the driveway, and abolished the old parking place originally established by Mayor Tood, which was then used exclusively by Welsh. Thereupon Welsh applied to the Supreme Court of New Jersey for a writ of certiorari to set aside the ordinance abolishing the parking place which he occupied by virtue of his contract with the railroad company.

The court sustained the ordinance, and on appeal its judgment was affirmed by the Court of Errors and Appeals. Welsh v. Morristown, 121 A. 697, 98 N. J. Law, 630; Welsh v. Potts, 124 A. 926, 99 N. J. Law, 528.

The town then by the ordinance in question re-established the old parking stand, and the railroad company, being a Pennsylvania corporation, filed its bill of complaint in the federal court of New Jersey praying for an injunction restraining the town from enforcing the ordinance and the taxicab drivers from soliciting custom or parking their taxicabs on its premises as above stated. The District Court granted a temporary injunction, which after hearing was made final. The railroad company contends that the ordinance is unconstitutional, in that its effect is to deprive it of its property without due process of law and without just compensation.

[1-3] The town did not condemn the property designated as a taxicab stand, as it had the inherent power to do by virtue of its right of eminent domain. It is a fundamental principle of law, recognized in both the state and federal Constitutions, that private property may not be taken for public use, the only use for which it may be taken under any circumstances, without due process of law and just compensation. Neither may an owner be deprived of any of the essential attributes of his property without like process and compensation. Bill Posting Sign Co. v. Atlantic City, 58 A. 342, 71 N. J. Law, 72; Ignaciunas v. Risley, 121 A. 783, 98 N. J. Law, 712; Pennsylvania Coal Co. v. Mahon, 43 S. Ct. 158, 260 U. S. 393, 67 L. Ed. 322, 28 A. L. R. 1321. The property of a railroad company is private property, and entitled to constitutional protection, just as any other private property. Spottiswoode v. Morris & Essex R. Co., 40 A. 505, 61 N. J. Law, 322; Skaggs v. Kansas City Terminal Railway Co. (D. C.) 233 F. 827; Western Union Telegraph Co. v. Pennsylvania Railroad Co., 25 S. Ct. 133, 195 U. S. 540, 49 L. Ed. 312, 1 Ann. Cas. 517. But every citizen holds his property subject to the proper exercise of the police power of the state Legislature, directly or by public or municipal corporations to which the Legislature has delegated it. Laws and ordinances relating to health, good order, public safety, and general welfare are police laws or regulations. It is well settled that such laws, though they may disturb the enjoyment of individual rights, are constitutional, although compensation is not made for such disturbance. The deprivation of the enjoyment of property

under such circumstances is not, within the meaning of the Constitution, a taking of private property for public use, but is simply a regulation of its use and enjoyment by the owner.

[4] Whenever private property is devoted to public use, such as that of a common carrier, it ceases to be "juris privati" only, and is "affected with a public interest." It then becomes subject to public regulation, and if in that regulation the enjoyment of some of its attributes are disturbed, and the owner suffers injury, this does not deprive him of his property without due process of law, nor take it without just compensation, nor deny him the equal protection of law. It is either damnum absque injuria, or, in the theory of the law, he is compensated for it by sharing the general benefit which the regulations confer. 1 Dillon's Municipal Corporations (5th Ed.) § 301; Welsh v. Morristown, 121 A. 697, 98 N. J. Law, 630; Munn v. Illinois, 94 U. S. 113, 24 S. Ct. 77; Union Dry Goods Co. v. Georgia Public Service Corporation, 39 S. Ct. 117, 248 U. S. 372, 63 L. Ed. 309, 9 A. L. R. 1420; Producers' Transportation Co. v. Railroad Commission, 40 S. Ct. 131, 251 U. S. 228, 64 L. Ed. 239.

[5] The test of whether or not a law, in its effect upon the enjoyment of property, is the taking of property without due process and just compensation, depends upon whether or not, under all the circumstances, the enactment of the law was a reasonable exercise of police power, and was justified by public necessities, or was unreasonable and arbitrary. Oregon R. & N. Co. v. Fairchild, 32 S. Ct. 535, 224 U. S. 510, 524, 56 L. Ed. 863; Great Northern Railway v. Minnesota, 35 S. Ct. 753, 238 U. S. 340, 59 L. Ed. 1337; Great Northern Railway v. Cahill, 40 S. Ct. 457, 253 U. S. 71, 64 L. Ed. 787, 10 A. L. R. 1335. "It is presumed that the municipality which is intrusted with the public safety and convenience of travelers is the best judge of the conditions and environments, and that it will not act in an unjust or oppressive manner, but for the good of the whole community." Ex parte Vance, 62 S. W. 568, 42 Tex. Cr. R. 619.

Mayor Potts said: "The police committee had a conference, and decided, after 14 or 15 months of trial with the cab stand on Lackawanna Place, it was not as desirable a place to have the cabs stand while they were waiting for their fares, that it was inconvenient to the traveling public, and in rainy and bad weather it constituted a menace to their health, and therefore they recommended to the board that the taxicab stand be moved back to the place it had occupied for some 10 or 12 years, and recommended the passage of an ordinance fixing that as a stand where the cabs waiting for fares could wait."

[6] No attack has been made upon the particular place designated for the cab stand as an unreasonable place, nor has there been upon the ordinance as an unreasonable exercise of police power. The contention is that the town was without power and not without reason. Three thousand people daily used the station. There were at times many automobiles, taxicabs, and persons coming to and going from the station and crowding its approaches. In this situation, amidst more or less confusion, we think that it was not an unreasonable exercise of police power to enact the ordinance establishing the parking place. The establishment of such a place would necessarily tend toward good order and public safety.

[7] The contract between the railroad company and Welsh did not deprive the town of the power to enact the ordinance. The driveway was devoted to a public use. Whatever right the contract conferred upon Welsh, it did so in view of, and not in subordination to, the right of the town to exercise its police power to regulate traffic in the driveway. The law silently incorporated itself into the contract, of which Welsh and the railroad company had to take cognizance when they entered into the contract. Welsh v. Morristown, 121 A. 697, 98 N. J. Law, 630, 634; Lindsey v. Mayor, etc., of Anniston, 16 So. 545, 547, 104 Ala. 257.

The town contends that the railroad company authorized it to establish the cab stand by its contract of September 24, 1912. It provides "that the town may and shall exercise all necessary police powers in and upon the station, station grounds, approaches and driveways, for the purpose of regulating foot and vehicular traffic at said station, and for the enforcement of the rules and regulations of the railroad companies in respect thereto."

[8] This provision authorized the town to do two things: To regulate foot and vehicular traffic about the station, station grounds, approaches, and driveways, and to enforce the rules and regulations of the railroad company in respect to the traffic. In performing the first duty, the town was to make its own rules and laws in accordance with which it would regulate the traffic. In doing the second, it was simply to enforce the rules and regulations made by the company. But the town had the power to make rules and regulations independently of the contract. As

Mr. Justice Trenchard said in his able opinion in the case of Welsh v. Morristown, supra: "The town had authority, not only by virtue of its police power, but by express grant from the railroad company owning the fee, to regulate traffic thereon." The town, therefore, in enacting the ordinance establishing the parking place and in enforcing the same, was exercising the police power delegated to it by the state and granted to it by the company. In other words, in addition to the power which the town had to regulate the use of private property for private purposes, the railroad company conferred upon it power to regulate traffic on its property by two acts: First, by devoting its property to public use and thus affecting it with a public interest; and, second, by entering into the contract which expressly granted that power.

The ordinance does not violate the constitutional rights of the company, and therefore the decree of the District Court is reversed, with directions to dismiss the bill, with costs.

BUFFINGTON, Circuit Judge (dissenting). Under whatever form of words the matter may be stated, the simple fact is that the railroad's property has been taken from it without compensation, and it is now denied possession of its own ground. In its agreement with the city, it asserted its private ownership of this private road, so what has been now taken for public use, under the guise of public property, is in fact private property. Because the Constitution forbids taking private property for public use without compensation, I record my dissent. What happened was that the railroad laid out and built a "driveway and station ground approach." It granted a public right of access to and from its station over such driveway in these words: "Said driveway shall be kept open at all times for passengers, pedestrians, * * * and general vehicular traffic to and from the station." But, far from surrendering its property and constituting it a public road, with all the incidents of municipal road control over municipal streets and highways, this contract with the municipality expressly stipulated—and it is the covenant of the municipality as well as the railroad—that "this contract shall not be construed as a dedication of said driveway as a public highway." In the face of this agreement, the city cannot, and courts should not, really and in fact, make the locus in quo a public highway, by exerting over it a municipal control, which can only be exercised over public streets.