266 N.J. Super. 1 (1993)
628 A.2d 753
C.I.C. CORPORATION, COAST CIGARETTE SALES, INC., ESKIN VENDING CORPORATION, AND AMUSEMENT MUSIC OPERATORS ASSOCIATION, PLAINTIFFS-RESPONDENTS,
v.
TOWNSHIP OF EAST BRUNSWICK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1993.
Decided July 2, 1993.
*3 Before Judges J.H. COLEMAN, ARNOLD M. STEIN and CONLEY.
Bertram E. Busch argued the cause for appellant (Busch and Busch, attorneys; Kenneth A. Levine and Mr. Busch, of counsel and on the brief).
Keith N. Biebelberg argued the cause for respondents (Biebelberg & Martin, attorneys; Barry D. Maurer and Mr. Biebelberg, of counsel and on the brief).
John M. Loalbo submitted a brief on behalf of amicus curiae Action on Smoking and Health; and amicus curiae New Jersey Group Against Smoking Pollution.
Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart submitted a brief on behalf of amicus curiae Tri-Agency Council.
The opinion of the court was delivered by CONLEY, J.A.D.
Concerned for the health of its minor residents affected by early smoking and after evaluating information showing that many young people readily obtain cigarettes through vending machines notwithstanding the illegality of such sales, N.J.S.A. 2A:170-51, the Township of East Brunswick enacted an ordinance in July 1990 banning such machines. Plaintiffs are owners and operators of cigarette vending machines. They challenged the legality of the ordinance on the grounds of preemption and equal protection. *4 The trial judge concluded that while a rational basis existed for the ban, the ordinance was preempted by State law. We reverse.
Ordinance 90-36 provides in pertinent part:
WHEREAS, the Surgeon General of the United States has called for a ban on the sale of cigarettes by vending machines, and
WHEREAS, the State of New Jersey has banned the sale or furnishing of cigarettes or tobacco in any form to minors under N.J.S. 2A:170-51 and,
WHEREAS, the Township of East Brunswick is unable to prevent the sale of cigarettes to minors by vending machines and no penalty has been imposed by State Statute upon minors for the purchase of cigarettes, and
WHEREAS, the Township of East Brunswick is authorized to enact ordinances not contrary to the laws of this State or of the United States as it may deem necessary and proper for the protection of persons and for the preservation of the public health, safety and welfare of the municipality and its inhabitants,
NOW, THEREFORE, BE IT RESOLVED by the East Brunswick Township Council as follows:
SECTION 1: The East Brunswick Township Council hereby establishes Chapter 68, Cigarette Vending Machines Prohibited, as a new chapter in the Code of the Township of East Brunswick.
SECTION 2: Section 68-1. In the view of the indiscriminate sales of cigarettes to minors by automatic vending machines, all cigarette vending machines are hereby prohibited in the Township of East Brunswick.
SECTION 3: Section 68-2. Penalty. Any person owning, operating, renting or permitting the use of a cigarette vending machine on premises under his or her control shall be subject to a fine of $250.00. Each day on which such a machine is owned, operated, rented or permitted on the premises, shall result in an additional fine.
This ordinance was enacted in the context of a growing national concern over ready access of young people to cigarettes and studies showing lax enforcement of laws making it illegal to sell cigarettes to minors. Compiled in May 1990, the office of Inspector General released a report on such access, stating "[e]ach day more than 3,000 children start smoking. A Journal of the American Medical Association article estimates that more than 3 million American children under age 18 consume 947 million packs of cigarettes yearly." U.S. Dep't of Health and Hum. Servs., Off. of Inspector Gen., Off. of Evaluation and Inspection, Youth Access to Cigarettes, 1 (May 1990). The report also points to vending machines as a source of unrestricted access by minors. The office of Inspector General recommended a model act which would, in *5 addition to other measures, provide for a ban on cigarette vending machines as a way of controlling the perceived problem. U.S. Dep't of Health and Hum. Servs., Model Sale of Tobacco Products to Minors Control Act (May 24, 1990).
When East Brunswick proposed such a ban, it received information from numerous sources. The information supported the concern expressed by the office of Inspector General. For instance, Dr. John Slade, chairman of the Commission on Smoking or Health, New Jersey State Department of Health, provided the East Brunswick Township Council with statistical data that 22% of the thirteen year olds surveyed who smoked regularly indicated that vending machines were usually their source of cigarettes and provided the Council with the results from surveys performed at New Jersey high schools indicating that two-thirds of all students used vending machines to obtain cigarettes. In addition to similar comments from students and parents, the Council was also provided information by Regina Carlson of New Jersey GASP Inc., and a member of the New Jersey Commission on Smoking or Health, that teen-age smoking "is a gateway to other drug use. Ninety-five percent of high school seniors who smoke have tried other illicit drugs. Only 27% of nonsmoking seniors have tried other illicit drugs." See also New Jersey Dep't of Health, Comm. on Smoking or Health, Preventing Tobacco Dependence in New Jersey Children (Nov. 1987).
The Council considered information as well from representatives of plaintiffs raising questions as to the accuracy of the studies and surveys and presenting alternatives to a total ban on vending machines. The primary alternative urged was the use of a "remote control device" which is placed on the machine and operates such that the machine is locked and can be unlocked only by the proprietor or employee activating a remote control release mechanism. It was also suggested that constant supervision by the proprietor or employee could be required to prevent minors from using the machines as well as placing the machines in areas not ordinary accessible to minors, such as bars and taverns.
*6 It was within the context of this information that the Council enacted Ordinance 90-36 and in doing so rejected the alternative proposals in favor of a total ban.

I.
There is no question that the East Brunswick Township Council had the power to enact Ordinance 90-36. Municipalities are broadly empowered to enact ordinances "not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants...." N.J.S.A. 40:48-2. Although subject to limits imposed by legislative prescription, these powers are liberally construed. N.J. Const., art. IV, § 7, ¶ 11; Mannie Cigarette Serv., Inc. v. Town of West New York, 259 N.J. Super. 343, 347, 613 A.2d 494 (App.Div. 1992).
To be sure protection of minors within the borders of East Brunswick from the perceived dangers of early smoking and illegal sale of cigarettes, affects matters of local concern. Cf. Dome Realty, Inc. v. City of Paterson, 83 N.J. 212, 226-27, 416 A.2d 334 (1980). Plaintiffs claim, however, that area has been preempted by the Legislature. The trial judge agreed, concluding that the ban was preempted by the Cigarette Tax Act, N.J.S.A. 54:40A-1 to -45, and the Unfair Cigarette Sales Act, N.J.S.A. 56:7-18 to -38. In doing so, he said:
The combination of both Acts convincingly demonstrates an existing statewide scheme to control and encourage the sale of cigarettes in multiple fashions, for the sake of imposing a tax and thereby raising revenue for state use. In the process the various layers of the enterprise are tracked through licensing. We may not like the purpose nor the methodology of this revenue measure, any more than we might applaud state funding generated from the sale of alcohol or from casino gambling. But we do not have the luxury to pretend such revenue measures were not enacted simply because we perceive some greater good. It may be argued that East Brunswick is just one community from among hundreds in New Jersey, and *7 only a miniscule amount of taxes will be lost; but certainly many municipalities are waiting to climb on this same bandwagon of popular local legislation.
We disagree.
Preemption has been defined as a judicially-created principle based on the proposition that a municipality, which is an agent of the State, cannot act contrary to the State. Mack Paramus Co. v. Mayor of the Borough of Paramus, 103 N.J. 564, 573, 511 A.2d 1179 (1986). Its application in any given circumstance "turns upon the intention of the Legislature." Ibid.
In determining the applicability of preemption, the following factors must be considered: whether the ordinance conflicts with state law, either because of conflicting policies or operational effect; whether the state law was intended, expressly or impliedly, to be exclusive in the field; whether the subject matter reflects a need for uniformity; whether the state scheme is so pervasive or comprehensive that it precludes coexistence of municipal regulation; and whether the ordinance stands as an obstacle to the accomplishment of the full purposes and objectives of the Legislature. Overlook Terrace Mgmt. Corp. v. Rent Control Bd., 71 N.J. 451, 461-62, 366 A.2d 321 (1976). "Hence an ordinance will fall if it permits what a statute expressly forbids or forbids what a statute expressly authorizes. Even absent such evident conflict, a municipality may be unable to exercise a power it would otherwise have if the Legislature has preempted the field." Summer v. Township of Teaneck, 53 N.J. 548, 554, 251 A.2d 761 (1969).
But, it is not enough that the Legislature has legislated upon a particular subject, for the question is whether the Legislature intended its action to preclude the exercise by local governments of the delegated police power. Dome Realty, 83 N.J. at 232, 416 A.2d 334; Summer, 53 N.J. at 554, 251 A.2d 761. As we recently said:
The mere fact of subject convergence is not, by itself, determinative of the preemption question. In evaluating a state preemption argument in the absence of an expressed preclusion of municipal authority, a court must carefully examine in detail the actual ways in which state and municipal ordinances conflict. The question is, in every practical sense, as much one of fact as one of law.

*8 [Mannie's, 259 N.J. Super. at 348, 613 A.2d 494 (citations omitted)].
In Mannie's we considered an ordinance regulating coin operated amusement or gaming devices. Although designed to prevent criminal activity, i.e. the use of video games in organized crime gambling operations, we determined that the ordinance was not preempted by State law criminalizing gambling activity. In doing so, we noted "it is difficult to see how regulation of the placement of devices that might be associated with gambling conflicts with the State's legislative policy of forbidding traffic in devices that are used for gambling. Manifestly, a municipal licensing scheme, by tracking the number and location of licensed devices, can only facilitate rather than conflict with the State's effort to prohibit their use for gambling." Id. at 349, 613 A.2d 494.
See also Bernardsville Quarry, Inc. v. Borough of Bernardsville, 129 N.J. 221, 230, 608 A.2d 1377 (1992) (although State Mine Safety Act, N.J.S.A. 34:6-98.4 and ordinance licensing and regulating operations of quarries both affect quarry operators, local ordinance not preempted in the absence of a clear intent to prohibit municipalities from regulating and licensing quarries for the health, safety, and welfare of the community and since the focus of the Mine Safety Act was upon a different safety concern, i.e. safety of mine and quarry workers); Mack Paramus Co., 103 N.J. at 576-77, 511 A.2d 1179 (State's statutory Sunday blue law did not preempt local Sunday blue law ordinances where 1) the State law did not represent an intent to comprehensively or exhaustively regulate the subject; 2) local ordinances did not permit what State law prohibited but rather were more restrictive of conduct that the State law neither expressly or affirmatively authorized; and 3) though a problem of State-wide concern, it also generated local concerns and responses and was not a matter upon which "diverse local decisions would be mischievous and even intolerable.").
We consider the trial judge's conclusion that the local ban on cigarette vending machines was preempted by the Cigarette Tax Act and the Unfair Cigarette Sales Act. Preliminarily, concern *9 over minors purchasing cigarettes is, assuredly, of State-wide proportion, as reflected by N.J.S.A. 2A:170-51 and N.J.S.A. 18A:36-32. But, like the control of Sunday closings or gaming devices, it is also very much a matter of local concern, responses to which could vary locally in both nature and intensity and upon which municipal action need not be "mischievous" or "intolerable," but rather useful. See Mack Paramus, 103 N.J. at 577, 511 A.2d 1179. We further think it plain that the State laws relied upon by the trial judge are simply not an expression of comprehensive or exhaustive regulation of the use of vending machines.
The Cigarette Tax Act, N.J.S.A. 54:40A-1 to -45, is designed to impose and prescribe a method of collection of a tax on the sale of cigarettes; to provide for the licensing of distributors, dealers and consumers; to provide for the control of the transportation of cigarettes in and through the State; and to provide penalties for violations of the Act. Coast Cigarettes Sales, Inc. v. Mayor of Long Branch, 121 N.J. Super. 439, 447, 297 A.2d 599 (Law Div. 1972). The primary purpose of the Unfair Cigarette Sales Act, N.J.S.A. 56:7-18 to -38, is to prohibit the sale of cigarettes by a wholesaler or retailer by unfair practices below cost. Lane Distribs. Inc. v. Tilton, 7 N.J. 349, 363, 81 A.2d 786 (1951). These statutes together disclose a legislative intent to deal with a state-wide problem and to protect the public from smuggling and deceptive trade practices, as well as to regulate by licensing those who distribute and sell cigarettes and to impose a tax. Coast Cigarettes, 121 N.J. Super. at 447-48, 297 A.2d 599.
Plaintiffs rely substantially upon Coast Cigarettes. There owners and distributors of cigarette vending machines challenged the validity of a municipal ordinance requiring the licensing of cigarette vending machines by arguing that the ordinance was preempted by the Cigarette Tax Act. Id. at 443-44, 297 A.2d 599. The court rejected the municipality's argument that its action was permissible under the N.J.S.A. 40:52-1, which grants municipalities power to license a number of specified businesses and structures. It noted that the statute omitted cigarette vending machines *10 and expressly prohibits municipalities licensing anyone already licensed by the state. Coast Cigarettes, 121 N.J. Super. at 449, 297 A.2d 599. However, in holding that the Cigarette Tax Act preempted the municipal licensing scheme, Judge Lane cautioned:
In holding that a municipality does not have authority to require licenses for cigarette vending machines, the court is not saying that the municipality may not have the power to regulate such machines at all. ... [Municipalities] may have the necessary police power under N.J.S.A. 40:48-2 to regulate plaintiffs' machines so long as they can show a need to do so for the public welfare, and so long as they do not require a license fee....
[Id. at 450-51, 297 A.2d 599 (emphasis added)].
See also Mogolefsky v. Schoem, 50 N.J. 588, 597-98, 236 A.2d 874 (1967) ("[S]tate real estate license law does not preempt all exercise of municipal police power over licensees."); Coculo v. City of Trenton, 85 N.J. Super. 523, 527, 205 A.2d 340 (App.Div. 1964) (the limitation upon a municipality's right to license a business does not render the business immune from other municipal ordinances to promote the public health, safety or welfare).
In Summer, for instance, the municipality enacted an ordinance dealing with blockbusting. Plaintiff claimed preemption in light of the State licensing of brokers and sellers through the Real Estate Commission and a statute making it unlawful for any real estate broker or seller to act or not act on the basis of race, creed or color. The Court held that the statutes did not preempt the municipality from enacting the blockbusting ordinance, holding: "[w]e therefore should not easily assume a statute providing for statewide licensure was intended to bar the municipalities from protecting their citizens from offensive conduct by the licensees." Summer, 53 N.J. at 556, 251 A.2d 761.
The mere fact, then, that the State has created a broad licensing and taxing scheme for cigarettes sellers and distributors does not prevent municipalities from regulating the effects of the conduct resulting from those licenses in order to protect the health and welfare of its residents. This is particularly so since the legislative intent of the two Cigarette Acts was to raise revenues and *11 control abuses arising from non-licensed sale of cigarettes, such as smuggling. Coast Cigarettes, 121 N.J. Super. at 447-48, 297 A.2d 599. The purpose of Ordinance 90-36 is to prevent the sale of cigarettes to minors; the focus is on the purchasers, not the sellers, of cigarettes. Thus, the purposes of the laws are quite different.
The concern, moreover, over the loss of tax revenue to the State as a result of the ban on cigarette vending machines is speculative. People who want to buy cigarettes, and are not prohibited from doing so because they are minors, likely will purchase their cigarettes over-the-counter, thereby resulting in no or insignificant change in the tax revenue flowing to the State.
Although rejected by the trial judge, plaintiffs also assert as evidence of legislative preemption the existence of N.J.S.A. 2A:170-51, prohibiting the sale of cigarettes to minors, and N.J.S.A. 18A:36-32, prohibiting vending machines on school property. However, the Township's ban on cigarette vending machines not only does not conflict with these statutes, it actually effectuates the statutes and is complementary to their primary purpose, i.e. to prevent illegal sale of cigarettes to minors. Nor do the statutes evince a legislative intent to preempt the field. N.J.S.A. 2A:170-51 does not deal with vending machines at all and while N.J.S.A. 18A:36-32 does, there is no evidence of legislative intent that the limited restriction of machines on school property was to be to the exclusion of more restrictive local measures. See also Brennan v. City of Seattle, 151 Wash. 665, 276 P. 886, 888 (Wa. 1929) (ordinance banning cigarette vending machines was not in conflict with statute prohibiting the sale of cigarettes to minors).
Significant also is the recent attempt by the Legislature to enact Assembly Bill No. 4868. The Assembly Drug and Alcohol Abuse Policy Committee's Statement to the bill indicates the bill sought to implement a State-wide ban on unattended cigarette vending machines in certain locations, such as train stations and board-walks, and to require remote control locking devices on machines *12 elsewhere. In order to "ensure uniform application of the law throughout the State, local governmental units would be preempted from enacting ordinances that conflict with the provisions of this bill. For example, municipalities would be precluded from banning the vending machines." The bill, thus, was a clear effort to preempt the field.
This bill was pocket-vetoed by Governor Florio on January 21, 1992 who, in his veto message, said:
I believe that municipalities in this State should retain the right to enact stricter laws with respect to tobacco vending machines, if they so choose. I will not sign legislation which would hobble local governments by precluding this right. Our communities should be free to pass tough local laws to protect the health, safety and welfare of their citizens and should not be unduly hampered by the State.

[Emphasis added].
No further legislative action has been taken. Although the failure to adopt a bill "should not be given great weight," Garden State Farms, Inc. v. Bay, 77 N.J. 439, 453, 390 A.2d 1177 (1978), the bill, its veto and legislative failure to override it is, nonetheless, some indication of an awareness that the field has not yet been preempted. See State v. Foglia, 182 N.J. Super. 12, 15-16, 440 A.2d 16 (App.Div. 1981), appeal dismissed, 91 N.J. 523, 453 A.2d 848 (1982).
There is no legislation which clearly intends to be exclusive with respect to cigarette vending machines, or with which ordinance 90-36 conflicts. While restrictions upon minors of access to cigarettes can be the subject of uniform state-wide regulation, sale of cigarettes to minors within the borders of a municipality is also a matter of municipal concern that can readily be regulated on a local basis. Such regulation does not conflict or interfere with any existing state laws. There is no preemption.

II.
In rejecting plaintiffs' equal protection claim that the total ban is not rationally related to the purpose intended and "draws an arbitrary, capricious and unreasonable distinction between *13 over-the-counter sales of cigarettes and cigarettes sold from vending machines that are operated via remote control, cigarettes sold from vending machines in establishments frequented by adults, and cigarettes sold in vending machines where there is an adult constantly supervising and observing purchases from the vending machine," the trial judge said:
The vending methods of a non-essential product clearly fall outside protection for a suspect or semi-suspect class, and are beyond the realm of any direct or indirect Constitutional guarantee. The differentiation which the Ordinance makes between over-the-counter cigarette vendors and automated machine vendors must only pass the rational basis test. Here the legitimate state interests are twofold: the prevention of the crime of selling cigarettes to minors and the general preservation of health, particularly in deterring immature youths from acquiring an addictive habit which statistically has a high incidence of many illnesses. A total ban on the unsupervised sale of cigarettes to anyone possessing the right change, is obviously related to those objectives. Legislative enactments must be accorded an initial presumption of Constitutional validity. Just because these East Brunswick legislators could have drawn the line differently does not automatically deny equal protection. New Jersey Restaurant Association v. Holderman, 24 N.J. 259, [295] 300, 131 A.2d 773 (1957).
....
Here the right is to engage in the public sale of a product, particularly cigarettes, and even more specifically through the use of automatic vending machines. The government regulations and resulting classification prohibit this method of vending cigarettes while allowing over-the-counter sales by store personnel. Providing a livelihood for one's family through free enterprise can be achieved through the employment of various sales techniques and involving innumerable products. Vendors such as the plaintiff[s] are still free to personally sell cigarettes directly to the consumers and/or to vend many other items from machines. The encroachment here on plaintiff's [sic] right to engage freely in commerce is very slight. Crime prevention and health needs of the public have already been discussed in the context of the federal analysis, and will not be repeated. But clearly a balancing of equal protection interests must come down on the side of upholding this Ordinance.
....
Plaintiffs do not stridently challenge an ordinance resulting in some limitation on their ability to vend from a machine. Rather, they suggest alternative measures less restrictive in nature: cigarette machines that can be released by the remote control of a person who supervises the nature of the sale being made; or limiting access to fully automated machines by placing them in the immediate area of a supervisor or at sites usually restricted to minors (e.g. in a lunchroom of a factory or in a tavern). While plaintiffs' suggestions might have merit, it must be recalled that the federal test to be applied does not require the least intrusive ban but simply whether the means are rationally related to some legitimate public purpose. Having satisfied that inquiry, legislators may choose the means they consider most *14 desirable or feasible. The same consequence flows once the New Jersey balancing process has been satisfied. Nevertheless, in their briefs and arguments East Brunswick has replied to plaintiffs' alternate suggestions. East Brunswick argues it has considered and rejected as ineffective such alternatives. The Township contends that remote control machines distance the supervisor's ability to closely scrutinize a buyer's age, or that the remote release monitor might be simultaneously engaged in other sales endeavors and hence be less diligent in monitoring. As to location of fully automatic cigarette machines, the Township asserts that a vendor would not usually want the machine at or behind his counter, and would then probably prefer to sell over-the-counter. If placed in a work setting there is no guarantee the automatic machine would not be accessible to parttime, summertime or afterschool youthful office workers within the same facility. East Brunswick also claims that the number of taverns, as distinguished from eating establishments, in the Township is negligible. I could not find East Brunswick's rejection of plaintiff's [sic] suggested alternatives to be an arbitrary or capricious denial.
We agree.
There is no question that the prohibition on the vending machines does not involve a suspect class or fundamental right and that it need only be rationally related to a legitimate governmental interest to satisfy equal protection and substantive due process concerns. E.g., 515 Assocs. v. City of Newark, 132 N.J. 180, 185, 623 A.2d 1366, 1368 (1993) (ordinance requiring twenty-four-hour armed security for buildings with more than seventy-five units upheld notwithstanding that a court might have reached a different determination, for "[o]ur role is not to review the merits of the legislation, nor to decide whether the ordinance will eradicate crime in high-rise apartments in Newark, nor to decide if Newark has chosen the most effective method of reducing the crime rate in the vicinity of the buildings...." slip op. at 4); Drew Assocs. of N.J., L.P. v. Travisano, 122 N.J. 249, 258, 584 A.2d 807 (1991) (claim that Cooperative Recording Act, N.J.S.A. 46:8D-1 to -18, does not rationally satisfy a legitimate State interest because it is an unnecessary, burdensome, duplication of existing notice requirements and, consequently, fails to provide additional protection, rejected: "[v]iewed in their best lights, these arguments go only to the wisdom of the legislation. In enacting the Cooperative Recording Act, the Legislature made certain findings that explain exactly why a rational basis exists to require the recording of the creation and transfer of cooperative interests, *15 even though other available methods might achieve the same ends." Id. at 260, 584 A.2d 807). See generally New Jersey State Bar Ass'n v. Berman, 259 N.J. Super. 137, 145-46, 611 A.2d 1119 (App.Div. 1992); New Jersey State League of Muns. v. State, 257 N.J. Super. 509, 518-20, 608 A.2d 965 (App.Div. 1992).
Long ago it was recognized that:
When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions to mark where the change takes place. Looked at by itself without regard to the necessity behind it, the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or to the other. When it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark.
[Taxpayers Ass'n of Weymouth Township. v. Weymouth Township., 80 N.J. 6, 41, 364 A.2d 1016 (1976), cert. denied sub nom. Feldman v. Weymouth Township, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977) (quoting Louisville Gas Co. v. Coleman, 277 U.S. 32, 41, 48 S.Ct. 423, 426, 72 L.Ed. 770, 775 (1927) (Holmes, J., dissenting))].
The information provided to the East Brunswick Township Council amply supported its determination that "a point has to be fixed or a line has to be drawn" as how best to prevent access of minors to cigarettes through the use of vending machines.
Plaintiffs assert a less restrictive means of preventing unrestricted access to vending machines could have been enacted. That may be so, but we cannot say the total ban is irrational. Indeed, the information provided to the Council was that the suggested less restrictive alternatives, such as locking devices or better supervision, had not been effective and were subject to the frailties of human carelessness and mechanical breakdowns of machines.
The Council could have, and obviously did, determine the effort to reduce access by minors to cigarettes would not be as effective as desired if something short of a total ban were implemented. This determination was within its legislative prerogatives. Ready access to cigarettes on the part of minors is a legitimate governmental concern. Unrestricted vending machines provide such *16 ready access. Preventing that is, thus, a valid objective. The total ban plainly will serve that objective. Whether the means chosen may be more encompassing than plaintiffs deem necessary is not for us to say. E.g. Weymouth, 80 N.J. at 41, 364 A.2d 1016. Accord Illinois Cigarette Serv. Co. v. City of Chicago, 89 F.2d 610, 613 (7th Cir.1937); Brennan v. City of Seattle, 151 Wash. 665, 276 P. 886, 888 (Wa. 1929); Edmonds v. City of St. Louis, 348 Mo. 1063, 156 S.W.2d 619, 622 (Mo. 1941).
Reversed and remanded for the entry of final judgment dismissing the complaint.