288 N.J. Super. 442 (1995)
672 A.2d 760
GENERAL FOOD VENDING INC., A NEW JERSEY CORPORATION, AND C.I.C. CORPORATION, A NEW JERSEY CORPORATION, PLAINTIFFS,
v.
TOWN OF WESTFIELD, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided December 1, 1995.
*444 Keith N. Biebelberg, Esq., for plaintiffs (Biebelberg & Martin, Attorneys).
Charles H. Brandt, Esq., for the defendant.
MENZA, J.S.C.
Plaintiffs, cigarette vending machine owners, challenge the constitutionality of an ordinance adopted by the defendant, the Town of Westfield, which prohibits cigarette vending machines in Westfield.
The facts are as follows:
In early 1995 the defendant initiated the process of adopting an ordinance with the purpose of preventing the sale of cigarette machines to minors. It considered two alternatives: 1) eliminating cigarette vending machines entirely, and 2) requiring cigarette vending machines to have locking devices to prevent purchase without human intervention.
*445 In late spring defendant introduced an ordinance, which banned cigarette vending machines entirely and, as required by law, advertised it in the newspaper and held a public hearing. Plaintiffs expressed their opposition to the total prohibition at the hearing and conducted a demonstration of a vending machine with a locking device in the hall outside of the meeting place.
At the defendant's July meeting, the Group Against Smoking Pollution, a public interest group, presented information regarding the sales of cigarettes to minors and the effectiveness of locking devices in preventing such sales. Defendant at that time also received correspondence from the manufacturer and vendor of the locking devices promoting their effectiveness.
On September 12, 1995, defendant adopted Ordinance No. 1649, which prohibits cigarette vending machines in the Town of Westfield. The ordinance provides:
ARTICLE IX
CIGARETTE VENDING MACHINES SECTION 9-36
CIGARETTE VENDING MACHINES PROHIBITED
In view of the indiscriminate sales of cigarettes to minors by automatic vending machines, all cigarette vending machines are hereby prohibited in the town of Westfield.
Prior to the adoption of the ordinance, each of the plaintiffs operated three cigarette vending machines in Westfield. However, as a result of defendant's enforcement of the ordinance, plaintiffs are no longer operating their vending machines in Westfield and one of the plaintiffs, C.I.C., has removed its vending machines from the Westfield locations altogether. There are no other relevant facts, and the court has accepted plaintiffs' explanation that the LDR-106R locking device is one-hundred percent effective in preventing unsupervised sales from cigarette machines.
Plaintiffs first contend that their cigarette vending machines are not "vending machines" within the meaning of the ordinance because they are equipped with locking devices that require *446 human activation before they will dispense cigarettes.[1] The plaintiffs further argue that the ordinance is unconstitutional on three grounds. Specifically, they argue that the ordinance violates the equal protection clause because the defendant's choice of the total ban is not rationally related to its goal of preventing the sale of cigarettes to minors. Next, plaintiffs argue that the ordinance is a taking because it unnecessarily and completely destroys the value of plaintiffs' business in Westfield. Finally, they argue that it violates the contract clause because it extinguishes the plaintiffs' contracts with the owners of the locations where the plaintiffs operate their vending machines. However, the gravamen of all plaintiffs' constitutional complaints is the same. They contend that defendant's choice of the total ban violates plaintiffs' constitutional rights because defendants rejected an alternative  requiring locking devices  which would have been as effective as the total ban in preventing cigarette sales to minors, and at the same time would have permitted the plaintiffs to continue their Westfield operations.
The defendant responds that the common meaning of the term "vending machines" includes cigarette vending machines which require human assistance to dispense cigarettes, and that the defendant intended such machines to be prohibited by the ordinance. Defendant further responds that if the language of the ordinance is vague in this regard it will amend it. In response to the plaintiffs' constitutional claims, defendant first argues that the total ban of cigarette vending machines is rationally related to its legitimate objective of preventing cigarette sales to minors. Next, it argues that the ordinance is a reasonable exercise of the municipality's police power to protect public health, and is not a taking because defendant has not completely destroyed the value of plaintiffs' property or taken it for its own use. Finally, defendant argues that the ordinance is not an unconstitutional impairment of the plaintiffs' contracts because it is a reasonable *447 method of furthering defendant's objective of preventing cigarette sales to minors. The gravamen of defendant's response to the plaintiffs' constitutional arguments is that in adopting the ordinance it has done all that is constitutionally required because it acted reasonably and therefore, the ordinance is a legitimate exercise of its police power to protect public health.

VENDING MACHINES
The first issue is whether plaintiffs' cigarette machines are "vending machines" within the meaning of the ordinance.
Webster's New Collegiate Dictionary (1981) defines "vending machine" as "a coin operated machine for vending merchandise." It defines "vend" as follows: "to sell; to dispose of something by sale." It defines a machine as "a coin operated device ." Thus, according to the commonly accepted definition of the term a "cigarette vending machine" is one that vends cigarettes when coins are deposited.
The plaintiffs, nevertheless, urge this court to adopt the position that a cigarette vending machine which requires a human attendant to activate it is by definition no longer a "vending machine." This position was taken by a Maryland trial court in Allied Vending, Inc. v. Montgomery County, Civil No. 80353 (Cir.Ct.Md. April 22, 1993), an unreported case in which the court struck down a county ordinance, which effectively banned the sale of cigarettes through vending machines, because it conflicted with the state law that expressly authorized such sales. This court rejects this narrow definition of "vending machine," which the court in Allied Vending stated in dicta, was inconsistent with the common usage of the term.
Plaintiffs further cite Pressley v. City of Chicago, 26 Ill. App.2d 283, 168 N.E.2d 41 (1960) and Continental Industries, Inc. v. Erbe, 107 N.W.2d 57 (Sup.Ct.Iowa 1961), in support of the argument that the ordinance does not apply to their machines. Neither case bolsters the plaintiffs' position. The Illinois Court of Appeals in Pressley v. City of Chicago held that an ordinance *448 restricting cigarette vending machines to certain locations did not apply to plaintiffs' machines because they required the customer, in order to obtain cigarettes, to give the money directly to the sales clerk, who then activated the cigarette dispenser by depositing the money in a remote control device. The court explained its decision as follows:
We are of the opinion that in the use of the device in question the storekeeper as licensee maintains the principle of the ordinance in imposing the responsibility for selling cigarettes to minors ... Id. [168 N.E.2d] at 44.
Here, the customer deposits the money directly into the machine.
In Continental Industries an evenly-split Iowa Supreme Court affirmed "by operation of law" a trial court's decision that an ordinance prohibiting vending machines did not apply to machines equipped with remote devices. This court is not persuaded by the holding of a foreign trial court, with which half of the members of its own highest court disagreed.
The machines in question, no matter how triggered, are vending machines within the meaning of the ordinance.

EQUAL PROTECTION CLAUSE
The first constitutional question is whether the ordinance violates the equal protection clause. This question has already been answered in C.I.C. Corp. v. East Brunswick Tp., 266 N.J. Super. 1, 628 A.2d 753 (App.Div. 1993), affirmed 135 N.J. 121, 638 A.2d 812 (1994), a case in which the court upheld the constitutionality of an ordinance adopted by East Brunswick that is identical to the Westfield ordinance.
The court in C.I.C. articulated the appropriate test to be applied to the challenged ordinance. It stated:
There is no question that the prohibition on the vending machines does not involve a suspect class or fundamental right and that it need only be rationally related to a legitimate governmental interest to satisfy equal protection and substantive due process concerns. (emphasis added) (citations omitted) Id. at 14 [628 A.2d 753].
*449 Applying the "rational basis test," the court rejected plaintiffs' argument that the equal protection clause required East Brunswick to choose a less restrictive means of accomplishing its objective  requiring remote control devices. In so doing the court wrote:
When it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark. (citations omitted)
The information provided to the East Brunswick Township Council amply supported its determination that "a point has to be fixed or a line has to be drawn" as how best to prevent access of minors to cigarettes through the use of vending machines. Id. at 15 [628 A.2d 753].
The Council could have, and obviously did, determine the effort to reduce access by minors to cigarettes would not be as effective as desired if something short of a total ban were implemented. This determination was within its legislative prerogatives. Ready access to cigarettes on the part of minors is a legitimate governmental concern. Unrestricted vending machines provide such ready access. Preventing that is, thus, a valid objective. The total ban plainly will serve that objective. Whether the means chosen may be more encompassing than plaintiffs deem necessary is not for us to say. Id. at 15-16 [628 A.2d 753] (emphasis added) (citations omitted).
This court must reach the same conclusion here. In adopting the ordinance, Westfield reviewed the pros and cons of employing locking devices to prevent vending machine sales of cigarettes to minors. The Council, after careful deliberation, chose to ban the machines altogether. This court cannot say that the defendant's decision to ban cigarette vending machines is irrational because it might have been able to restrict cigarette sales to minors some other way.
Plaintiffs, nevertheless, urge this court to reject the holding in C.I.C., on the theory that the Appellate Division misunderstood the fact that a cigarette vending machine equipped with an LDR-106R locking device would restrict the access of minors to cigarettes as effectively as the total ban. Plaintiffs miss the key point of the court's holding which is that once a governmental objective is determined to be legitimate, the relative effectiveness of the alternative means considered to accomplish the goal is irrelevant. Stated another way, all that the rational basis test requires is that *450 the alternative chosen bear some logical relationship to the end sought. This court concludes that, based upon the above discussion, defendant's total ban on cigarette machines unequivocally passes the rational basis test.
The Massachusetts Supreme Judicial Court agrees with our analysis. In Take Five Vending, Ltd. v. Town of Provincetown, 415 Mass. 741, 615 N.E.2d 576 (Sup.Ct. 1993), it concluded that a town's by-law prohibiting the sale of cigarettes by vending machines rationally furthered the legitimate state interest of preventing sales to minors, and in so doing, rejected the plaintiffs' argument that locking devices would be equally effective. The court wrote:
We have consistently held that a legislative difference in treatment reasonably related to a legitimate public purpose is permissible ... The equal protection clause in the context of economic legislation limits legislative discretion only to the extent of forbidding arbitrary or irrational classifications ... We, as a judicial body, may not substitute our independent judgment for that of the Legislature in areas of practical administration which may justify, even require, rough accommodations that to some extent result in dissimilarity of treatment. Id. [615 N.E.2d] at 582 (citations omitted).
This court notes that, as discussed above, the plaintiff C.I.C. has already litigated this issue in C.I.C. and therefore, the principles of collateral estoppel bar it from retrying it here. See e.g. United Equip. Co. v. Aetna Life and Casualty Co., 74 N.J. 92, 376 A.2d 1183 (1977).

Unconstitutional Taking of Property
The second issue is whether the ordinance is a taking in violation of the Fifth and Fourteenth Amendment of the U.S. Constitution and Article I, Paragraph 20 of the New Jersey Constitution.
The Fifth Amendment to the U.S. Constitution prohibits the taking of private property "for public use without just compensation." Article I, Paragraph 20 of the N.J. Constitution contains a similar, parallel provision. Thus, it follows that a regulatory scheme that is valid under the federal taking clause will also be valid under the state taking provision.
*451 The court In re Recycling & Salvage Corp., 246 N.J. Super. 79, 586 A.2d 1300 (App.Div. 1991), held that the application of the Solid Waste Utility Control Act (N.J.S.A. 13:1E-26) to the plaintiffs' solid waste transfer station, was not a taking of the plaintiffs' waste disposal contracts because its contracts were illegal. The court, in so doing, explained the circumstances under which a statute enacted pursuant to the police power constitutes the taking of private property.
It wrote:
There is a distinction between a taking in the constitutional sense for government use, for which compensation is compelled, and restrictions imposed on the use of property through governmental exercise of the police power, for which no compensation is mandated.
Many years ago, Professor Freund stated in his work on The Police Power, § 511, at 546-547, `It may be said that the state takes property by eminent domain because it is useful to the public, and under the police power because it is harmful * * * From this results the difference between the power of eminent domain and the police power, that the former recognized [sic] a right to compensation, while the latter on principle does not.' Thus the necessity for monetary compensation for loss suffered to an owner by police power restriction arises when restrictions are placed on property in order to create a public benefit rather than to prevent a public harm. (citations omitted)

Thus, the government need not normally compensate property owners for restrictions placed on property use pursuant to the police power (i.e., for the health, safety or welfare of the public). However, if the regulation unjustly reduces the economic value of property (e.g. only slightly promotes public welfare, but greatly reduces property value) the regulation may be deemed a taking for which compensation is due. Id. at 103-04 [586 A.2d 1300].
It is clear that Westfield enacted the ordinance pursuant to its police power and therefore, this court must determine whether the consequent reduction in the value of plaintiffs' property amounts to an unconstitutional taking.
In Connolly v. Pension Guaranty Corp., 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986), the U.S. Supreme Court articulated three factors which have particular significance in determining whether a regulation enacted in furtherance of the police power, such as the one at issue in this case, require compensation. The factors are:
(1) the economic impact of the regulation on the claimant;

*452 (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and
(3) the character of the governmental action. Id. at 225 [106 S.Ct. at 1026]
Application of the three-pronged test of Connolly is an appropriate method of determining whether the ordinance in this case, which restricts the use of the plaintiffs' non-real property, is a taking.
With regard to the economic impact of the regulation on the plaintiffs' cigarette business in Westfield, the ordinance eliminates it. Nevertheless, plaintiffs retain the entire value of their capital investment  the vending machines  and are free to operate them in any multitude of places where it is lawful to do so. They may also use the machines to sell another product. Thus, the total ban does not completely destroy the value of plaintiffs' property because, even though plaintiffs prefer to sell cigarettes from the machines in Westfield, they are free to put their machines to the next best alternative use.
With regard to the second factor, the state regulation of those who distribute and sell cigarettes through licensing and taxing (N.J.S.A. 54:40A-1 et seq.) serves to minimize the reasonableness of any expectation that plaintiffs may have had regarding the perpetual operation of their vending machine businesses.
The state has already acted to prevent cigarette sales to minors. N.J.S.A. 2A:170-51 expressly prohibits the sale or furnishing of cigarettes to minors. N.J.S.A. 18A:36-32, which the Legislature enacted in 1989, prohibits cigarette vending machines on school property.[2] In addition to state regulation of cigarette sales to minors, the Surgeon General of the United States has urged a nation wide ban of the sale of cigarettes by vending machines to *453 prevent such sales.[3] This court finds that in light of the extensive state regulation of cigarette sales, particularly to minors, and the national campaign to limit the availability of cigarettes to young people, it would be unreasonable for plaintiffs to expect that their businesses would be immune from further regulation to prevent the sale of cigarettes to minors. As the court stated in Connolly:
Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end. (citations omitted) Id. at 227 [106 S.Ct. at 1027].
Finally, with regard to the third factor, the ordinance does not physically invade the plaintiffs' property or appropriate any of it for its own use. Rather, it prohibits plaintiffs from operating their cigarette vending machine business in order to promote public health by eliminating one of the sources of sales of cigarettes to minors.
Based upon the above application of the factors set out in Connolly, this court concludes that the ordinance is not a taking because its interference with the plaintiffs' businesses is a necessary and noncompensable consequence of a reasonable exercise of the defendant's police power to promote the public health by eliminating one of the sources of cigarette sales to minors.
Plaintiffs, in support of its takings claim place great emphasis on a trial court's holding in Southland Corp. v. Edison Tp., 217 N.J. Super. 158, 524 A.2d 1336 (Law & Ch.Div. 1986), aff'd 220 N.J. Super. 294, 531 A.2d 1361 (App.Div. 1987), a case in which the court struck down an ordinance which restricted the hours of operation of certain retail businesses, on due process grounds. They argue that Southland stands for the proposition that defendant must employ the least restrictive means available to accomplishing its objective because the impact of the ordinance on plaintiffs' business outweighs the public need to prevent the sale of cigarettes to minors. Plaintiffs also argue that Southland *454 requires a municipality to demonstrate a compelling need in cases where a regulation constitutes a substantial intrusion on a plaintiffs' business interests. We disagree.
In reviewing the question of how due process fits into a conflict that sometimes arises when the government's exercise of the police power clashes with private rights the court in Southland wrote:
The police power is the public right to reasonable regulation for the common good and welfare. The constitutional principles of due process and equal protection demand that the exercise of the power be devoid of unreason and arbitrariness, and the means selected for the fulfillment of the policy bear a real and substantial relation to that end.
The lesson of this case is that when governmental action comes under either due process or equal protection scrutiny, the fundamental question for the reviewing court is whether the ordinance exceeds the rule of reason because there is either no public need to act upon or because the restrictions imposed unreasonably and irrationally exceed the public need. Id. at 174 [524 A.2d 1336]. (emphasis added).
This case is unlike Southland. As discussed, defendant's total ban on cigarette machines is reasonable. It is not, as in Southland, unreasonable and arbitrary. It does not, therefore, offend due process or equal protection.
Plaintiffs, in further support of their takings argument, cite Fasino v. Mayor & Borough Montvale, 122 N.J. Super. 304, 300 A.2d 195 (Law Div. 1973), a case in which the court held that an ordinance prohibiting retailers from operating between the hours of 11 p.m. and 6 a.m. violated the due process clause. The court, in striking down the ordinance, found that it was not sufficiently related to its purpose of protecting the peace and quiet of the community, and therefore was an illegitimate exercise of the police power. Id. at 318, 300 A.2d 195. The court's decision in Fasino, although replete with laissez faire dicta, cannot help the plaintiffs here. We have already concluded that the relationship between Westfield's total ban of cigarette machines and the goal of preventing cigarette sales to minors is sufficient to render it a legitimate exercise of the police power.
The plaintiffs cite two cases, Bill Posting Co. v. Atlantic City, 71 N.J.L. 72, 58 A. 342 (Sup.Ct. 1904) and O'Mealia Outdoor *455 Advertising Co. v. Rutherford, 128 N.J.L. 587, 27 A.2d 863 (Sup. Ct. 1942), in which the court held that the ordinances regulating the size and location of billboards amounted to unconstitutional takings of private property because the ordinances were not related to public safety. Rather, they were intended to protect aesthetic concerns. Brushing aside the fact that the "takings" in these cases were based upon ordinances that deprived the landowners of the physical use of a portion of their land, the cases would be decided differently today. Under the standard set forth in State v. Miller, 83 N.J. 402, 416 A.2d 821 (1980), the preservation of property values and aesthetics, which the ordinances in the billboard cases sought to achieve, is now recognized as a legitimate exercise of the police power.

CONTRACTS CLAUSE
The final constitutional question is whether the ordinance violates the contract clause of the U.S. and New Jersey Constitutions.
The contract clause of the U.S. Constitution prohibits a state from passing any "law impairing the obligation of contracts...." The New Jersey Constitution provides a parallel prohibition. These two constitutional provisions are applied in the same way to provide the same protection.
The court in In re Recycling, supra, explained that the state in the exercise of its police powers may adopt regulations that result in the impairment or destruction of private contracts under certain circumstances. It wrote:
Although the language of the federal contract clause is absolute on its face, its prohibition against the impairment of contracts must be accommodated to the inherent police power of the states to safeguard the vital interests of their residents. The contract clause does not deprive the states of their power to adopt general regulatory measures even if those regulatory measures result in the impairment or destruction of private contracts. The United States Supreme Court has "long recognized that a statute does not violate the Contract Clause simply because it has the effect of restricting, or even barring altogether, the performance of duties created by contracts prior to [the statute's] enactment." Id. at 100-101 [586 A.2d 1300] (citations omitted).
*456 The court then articulated the three-pronged test to be applied in determining whether a particular state regulatory measure is constitutionally valid under the contract clause, as follows:
The first inquiry is whether the challenged regulatory measure has, in fact, caused a substantial impairment of a contractual relationship. If the challenged regulatory measure does impair a contract, then the second inquiry is whether the regulatory measure came into being pursuant to a significant and legitimate public purpose. Once a legitimate public purpose has been established for the challenged regulatory measure, the inquiry shifts to whether the adjustment of the rights and responsibilities of the contracting parties caused by the regulatory measure is based upon reasonable conditions and whether the adjustment is sufficiently related to the appropriate governmental objective or interest. Id. at 101 [586 A.2d 1300] (citations omitted).
The court in Edgewater Investment Associates v. Borough of Edgewater, 201 N.J. Super. 267, 493 A.2d 11 (App.Div. 1985) applied these factors and held that a retroactive application of the Senior Citizens and Disabled Protected Tenancy Act (N.J.S.A. 2A:18-61.28c), which prevented apartment owners who wished to convert the apartments to condominiums from evicting the tenants protected by the Act, did not violate the contract clause. In so doing the court concluded that the statute did not substantially impair the contract rights of the landlords, but even if it had, the statutory purpose of protecting the mental and physical health of New Jersey's elderly constituted an entirely appropriate governmental objective. Once the legitimacy of the objective had been established, the court found that the substantial nexus between objective and the means utilized to accomplish it saved the statute from offending the contract clause. The court wrote:

W[e] note the enlarged degree of deference accorded by the United States Supreme Court to state economic and social legislation affecting private contract rights. We are satisfied that whatever incidental effects the legislation may have on the rights of property owners, they are far outweighed by the salutary purpose underlying the legislative scheme. Id. at 280 [493 A.2d 11] (emphasis added).
In Gateway Apts. v. Mayor & Township Council of Nutley, 605 F. Supp. 1161 (D.N.J. 1983), the court held that an ordinance which required landlords to share property tax rebates with their tenants, even though it did not necessarily return the rebate to the particular tenant who suffered the tax, did not unconstitutionally impair the contracts between the landlords and tenants. The *457 court found that although the impairment to the contracts had been minimal, the state's interest was "significant and legitimate." Id. at 1173. The court went on to apply the final step in the contracts analysis and wrote:
Giving proper deference to the municipal governing body that enacted the ordinance here at issue, the court cannot but find that the means here adopted do, in fact, serve the desired ends; if the fit between the two is not perfect, it is also not unreasonable or arbitrary. Id. at 1172.
In reaching its conclusion that the statute did not offend the constitution the Gateway court noted that the contracts "analysis has obvious similarities to the due process and takings analyses undertaken above" in that insofar as state action constitutes a rational exercise of the police power, it survives challenges under the due process and contract clauses as well. Id. at 1172.
Assuming arguendo that the ordinance has substantially impaired the plaintiffs' oral contracts with the owners of the cigarette machine locations, Edgewater and Gateway make it clear that the ordinance will be saved by a finding of a legitimate state purpose and a showing of a reasonable relationship between the goal and the means selected to accomplish it. This court, in evaluating plaintiffs' equal protection and takings claims, has already concluded that the ordinance furthers the legitimate government objective of preventing cigarette sales to minors. Moreover, we have concluded that the defendant's chosen means of accomplishing its goal is not unreasonable or arbitrary. On the same basis, this court concludes that the ordinance does not violate the contracts clause.
In sum, this court is entirely satisfied that the ordinance is immune from constitutional attack. Defendant's total ban on cigarette vending machines furthers the valid, if not laudable, public goal of eliminating a documented source of cigarettes for our young citizens, many of whom do not yet realize the undisputable health hazards associated with smoking. This court concludes that the ordinance is a legitimate exercise of defendant's police powers because it is reasonably related to its avowed goal of preventing cigarette sales to minors.
NOTES
[1] The plaintiff C.I.C. has already installed locking devices on its machines and the plaintiff General Vending Machines, Inc. intends to install them soon.
[2] N.J.S.A. 18A:36-32:

Any person who, acting as an agent or otherwise, permits the operation, installation, or maintenance of coin-operated vending machines that dispense cigarettes on any property used for school purposes which is owned by any school board shall be punished by a fine of $250.00.
[3] The preamble of the ordinance states:

WHEREAS, the Surgeon General of the United States has called for a ban on the sale of cigarettes by vending machines;