955 A.2d 1003 (2008)
402 N.J. Super. 650
ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC.; Caso's Gun-A-Rama, Inc.; Lisa M. Caso; and Scott L. Bach, Plaintiffs-Respondents,
v.
The CITY OF JERSEY CITY; Jerramiah T. Healy, Mayor of Jersey city; and Thomas Comey, Chief of Police of Jersey City, Defendants-Appellants, and
Associated Community Organizations for Reform Now (Acorn New Jersey), Greenvile Chapter, Defendant/Intervenor-Appellant.
Nos. A-4443-06T2, A-4708-06T2.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 2008.
Decided September 29, 2008.
*1004 Thomas C. Jardim, argued the cause for the Jersey City appellants (Ramsey Berman, PC, attorneys; Mr. Jardim, of counsel and on the brief).
Jenny-Brooke Condon, Newark, argued the cause for the intervenor/appellant (Linda Fisher and Ms. Condon, of the Center for Social Justice at Seton Hall Law School, with Renee Steinhagen, of the New Jersey Appleseed Public Interest Law Center, attorneys; Ms. Steinhagen, on the brief).
Frank Pisano, III, Montville, argued the cause for respondents (Needleman and Pisano, attorneys; Mr. Pisano, on the brief).
Ethan Dettmer (Gibson, Dunn & Crutcher) of the California bar, admitted pro hac vice, San Francisco, CA, argued the cause for amicus curiae Legal Community Against Violence (Richard Gutman and Mr. Dettmer with Frederick Brown (Gibson, Dunn & Crutcher) and Jaime Byrnes (Gibson, Dunn & Crutcher), both of the California bar and both admitted pro hac vice, attorneys; Mr. Dettmer, Mr. Brown, and Ms. Byrnes, on the brief).
Lowenstein Sandler, Roseland and Craig R. Levine, for amicus curiae New Jersey Institute for Social Justice (Mr. Levine, of counsel and on the brief).
Before Judges STERN, C.L. MINIMAN and KESTIN.
The opinion of the court was delivered by
KESTIN, J.A.D. (retired and temporarily assigned on recall).
On January 2, 2007, the trial court entered an order with the following terms:
that Jersey City Code, Chapter 163, Article V, City Ordinance 06-116 denies the equal protection of the laws, contrary to Article I, Paragraph 1 of the New Jersey Constitution and is preempted by the New Jersey Code of Criminal Justice and is invalid in accordance with N.J.S.A. 2C:1-5d, is void, and has no legal force and effect.
The trial court's reasons for the order had been expressed on the record in a December 13, 2006 proceeding. On April 13, 2007, the trial court denied defendants' motion to reconsider.
Defendants, City of Jersey City; its mayor, Jerramiah T. Healy; and its chief of police, Thomas Comey, filed an appeal. Intervenor/Defendant, the Greenville Chapter of Associated Community Organizations for Reform Now (Acorn New Jersey), filed a separate appeal. We consolidated the appeals.
*1005 On June 27, 2008, we invited the parties to file supplemental briefs addressing the impact of the decision of the United States Supreme Court in District of Columbia v. Heller, ___ U.S. ___, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), which had been handed down since oral argument. We are now satisfied that decision has no bearing on the state law issues raised in this case. Issues arising from the Second Amendment to the United States Constitution have not been raised herein.
The terms of the ordinance prohibit the sale or purchase of more than one handgun within a thirty-day period. In their three-count complaint in lieu of prerogative writs, plaintiffs challenged the ordinance as preempted by State law, as a denial of equal protection of the laws, and as void for vagueness. After considering the written and oral arguments of the parties, Judge Gallipoli held the ordinance to be invalid on preemption grounds, to violate equal protection principles, and to be "arbitrary and capricious" because it "does not and will not address the reality of the existence and availability of illegal guns in the [C]ity."
With respect to the preemption holding, Judge Gallipoli stated:
The New Jersey Legislature adopted N.J.S.A. 2C:58 et seq., establishing a set of laws in the area of gun control. The laws establish uniform procedures and requirements for the purchase and sale of firearms, issuance of gun permits, and background verifications of p[ro]spective purchasers.
2C:58-3i addresses the number of firearms a person may purchase. It reads as follows[:]
Only one handgun shall be purchased or delivered on each permit, but a person shall not be restricted as to the number of rifles or shotguns he may purchase, provided he possesses a valid firearms purchaser identification card and provided further that he signs the certification required in subsection b of this section for each transaction.
It's undisputed that the statute permits an individual to have multiple handgun permits so long as the permits are obtained in compliance with the strict guidelines in 2C:58-3d through f.
Furthermore, 2C:58-3f provides[:] "There shall be no conditions or requirements... by the licensing authority for the issuance of a permit or identification card, other than those that are specifically set forth in this chapter[.]"
The Ordinance 06-116, however provides[:] "No resident of Jersey City may purchase or make application to purchase more than one handgun within a 30-day period[.]"
Furthermore[:] "No dealer within the City of Jersey City shall sell any handgun to any person who made application to purchase any other handgun within the City of Jersey City within a 30-day period thereto[.]"
Thus, the ordinance makes it unlawful for a Jersey City resident to purchase or sell more than one handgun per permit in a 30-day period, putting its prohibitions in direct conflict with the State's statutory scheme set forth in 2C.
The New Jersey Supreme Court affirmed[:] "[L]ocal legislation cannot permit what a state statute or regulation forbids or prohibit what state enactments allow[.]" Township of Chester v. Panicucci, 62 N.J. 94, 99, 299 A.2d 385 (1973).
Furthermore[:] "a municipality may be foreclosed from exercising power it would otherwise have if the state has sufficiently acted in a particular field[.]" [Ibid.]

*1006 In addition, where a state enactment provides[:] "[a] complete system of law," [] the New Jersey Supreme Court infers a legislative intent to preempt parallel municipal legislation. [] State v. Crawley, 90 N.J. 241[, 250] (1982).
2C:58 has been recognized by the New Jersey Supreme Court as a "[`]careful grid['] of regulatory provisions," in the field of handgun regulation. In re Price [Preis], 118 N.J. 564[, 568] (1990).
And the language of the statute itself refers to a "strict regulatory scheme[.]" N.J.S.A. 2C:58-2.2a.
The Legislature clearly intended to create a complete system of law with respect to firearm regulation. The statute directs all aspects of the application, purchase and sale of firearms. It also requires applicants to undergo intensive 13-point individual investigations, including criminal background checks, in order to obtain firearm permits. Thus, it can be and is inferred by me that the Legislature intended to preempt municipal gun control legislation.
Moreover, the Ordinance 06-116 expressly forbids what state law allows and it is fatally flawed for that reason as well.
2C:58 et seq. allows an individual to purchase more than one handgun provided that he or she possesses more than one valid permit without the imposition of any time or frequency restrictions. The ordinance, however, expressly limits the number of handguns that a Jersey City resident can purchase regardless of the number of permits he or she possesses. As a result, the Jersey City resident with two handgun permits would be unable to unlawfully purchase two handguns on any given day, week or month because this ordinance forbids it.
Once an individual purchases a handgun on his or her first permit, the second handgun permit becomes inactive and is essentially rendered useless for a 30-day period. The ordinance, thus, makes it illegal for an individual to make a lawful gun purchase pursuant to 2C:58.
This ordinance also, in my mind, undermines the legislative intent of 2C:58, which prescribes carefully outlined guidelines for obtaining handgun permits and selling and purchasing handguns. More specifically, 2C:58-3i does not in any way limit the purchases of guns per individual.
Had the Legislature intended to restrict purchases per individual, it could and would presumably have done so in 2C. Instead, the Legislature decided to limit the number of handgun purchases per permit. As a result, the number of purchases depends solely on the number of active valid permits.
Following his articulation of this rationale, Judge Gallipoli went on to dispose of the equal protection issue and related questions. Applying State constitutional law concepts and citing State court cases, he ruled in favor of plaintiffs on those grounds, as well.
After analyzing the record in the light of the arguments advanced by the parties, we are in substantial agreement with Judge Gallipoli's reasoning on the State law preemption issue.
The State law preemption doctrine embodies a five-part test:
1. Does the ordinance conflict with State law, either because of conflicting policies or operational effect (that is, does the ordinance forbid what the Legislature has permitted or does the ordinance permit what the Legislature has forbidden)?

*1007 2. Was the state law intended, expressly or impliedly, to be exclusive in the field?
3. Does the subject matter reflect a need for uniformity? Inganamort v. Borough of Fort Lee, 62 N.J. [521,] 528-30, 303 A.2d 298 [(1973),] has perceived "subject matter inherently in need of statewide treatment" in terms of jurisdictional power, posing the question of whether the State Constitution has prohibited delegation to the municipality of power to enact ordinances in a certain sphere.
4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?
5. Does the ordinance stand "as an obstacle to the accomplishment and execution of the full purposes and objectives" of the Legislature?
[Overlook Terrace Mgmt. Corp. v. Rent Control Bd. of West New York, 71 N.J. 451, 461-62, 366 A.2d 321 (1976) (citations omitted).]
As the Supreme Court demonstrated in Overlook itself, the application of these tests is not mechanical or formalistic; rather, it is purpose-driven and laden with basic policy considerations and factual nuances. See also, e.g., C.I.C. Corp. v. Township of East Brunswick, 266 N.J.Super. 1, 628 A.2d 753 (App.Div.1993), aff'd o.b., 135 N.J. 121, 638 A.2d 812 (1994); Mannie's Cigarette Service, Inc. v. Town of West New York, 259 N.J.Super. 343, 613 A.2d 494 (App.Div.1992).
"[I]t is not enough that the Legislature has legislated upon a particular subject, for the question is whether the Legislature intended its action to preclude the exercise by local governments of the delegated police power." C.I.C Corp., supra, 266 N.J.Super. at 7, 628 A.2d 753; see also Mannie's, supra, 259 N.J.Super. at 348, 613 A.2d 494. As the approaches in C.I.C. and Mannie's exemplify, the scope of a State legislative exercise, in respect of the authority of local legislative bodies to enact provisions touching upon the same subject matter, is rarely expressed in stated terms; rather, the Legislature's intendment in this regard must usually be inferred from the context of its enactment and insight into whether, as a practical matter, the State design precludes the local exercise, either because of a conflict or a sense that the Legislature intended to occupy the whole subject matter field. See State v. Ulesky, 54 N.J. 26, 29, 252 A.2d 720 (1969).
C.I.C., for example, dealt with the preemption issue in the context of cigarette vending machine licensing. Even though we took an earlier decision to emphasize that municipalities were "expressly prohibit[ed]... [from] licensing anyone already licensed by the state[,]" C.I.C., supra, 266 N.J.Super. at 10, 628 A.2d 753, we held that "[t]he mere fact ... that the State has created a broad licensing and taxing scheme for cigarette sellers and distributors does not prevent municipalities from regulating the effects of the conduct resulting from those licenses in order to protect the health and welfare of its residents." Ibid. We viewed "the purposes of the [State enactment and the local ordinance to be] quite different." Id. at 11, 628 A.2d 753. And, we concluded that "[t]here is no legislation which clearly intends to be exclusive with respect to cigarette vending machines, or with which [the] ordinance [in question] conflicts." Id. at 12, 628 A.2d 753.
In Mannie's, we reversed a trial court's determination invalidating an ordinance regulating and licensing coin-operated amusement or game devices on the basis that it had been preempted by state law regarding gambling. We held that "it is far from clear that an ordinance imposing *1008 a license fee and regulating the number of amusement devices and the square footage governing their placement runs afoul of state criminal law policy." Mannie's, supra, 259 N.J.Super. at 348, 613 A.2d 494. We opined, also:
Furthermore, in the light of the statutes that grant municipalities plenary authority to regulate amusement devices,... it cannot be said that the Legislature has intended to occupy the entire field of control exclusively, that there is a clear need for uniformity, that the state scheme is so pervasive or comprehensive as to preclude coexistence of municipal regulation, or that the ordinance in any significant way hinders the accomplishment and execution of the full purposes and objectives of the Legislature.
[Id. at 349, 613 A.2d 494.]
In both C.I.C. and Mannie's, the ordinances had been challenged on the grounds that the State's general regulation and taxing of tobacco products, on the one hand, or the State's supervening criminal law authority, on the other, invalidated the local attempts to regulate individual conduct for the purpose of promoting the public health and welfare. The relationship between the ordinance in this case and the State's chosen modes of control is more direct and specific, however, than was the case in either C.I.C. or Mannie's. Jersey City, via the ordinance at issue, seeks to impose a local standard in a subject matter area that has been rather comprehensively addressed by the State.
In C.I.C. and Mannie's, the ordinances purported to regulate, in particular ways, specific activities that were touched, in other ways, by State legislation addressing more generalized objectives. Here, however, the State has developed a detailed and apparently comprehensive scheme for licensing and otherwise regulating the purchase and sale of firearms; and the City has endeavored to add performance criteria in the very same context. Although the precise means chosen by the City are not found in State law or regulation, the manner in which they impact on the State law licensing scheme could not be more direct.
As Judge Gallipoli observed, the standard limiting the purchase of handguns to one in thirty days operationally contradicts the State scheme that permits any number of handguns to be purchased with no time limitation as long as the purchaser obtains a separate permit for each purchase. It is not within the general home-rule powers of municipal governments, nor within any authority established in State law for them to act in the field of firearm regulation and control, see N.J.S.A. 40:48-1(18), to craft and impose a standard governing purchase and sale that is different from the scheme established in State legislation dealing with that specific subject matter.
Township of Chester v. Panicucci, 62 N.J. 94, 299 A.2d 385 (1973), furnishes no authority for a contrary result. Indeed, the reasoning of the Supreme Court in that case supports the result reached here. Without a stronger showing than has been made here that the ordinance would be effective to promote public health, safety or welfare in Jersey City (or elsewhere, in respect of its extra-territorial effect, i.e., the application of its prohibitions to all Jersey City residents), it cannot stand to the extent it varies the rules of purchase and sale from what they are under the State's comprehensive gun control laws. The ordinance here goes beyond the purposes of the ordinance in Chester, which directly addressed firearm use, i.e., the conduct of persons, within the municipality. As Justice Hall wrote for a unanimous court in Chester: "Obviously local legislation *1009 cannot ... prohibit what state enactments allow." Id. at 99, 299 A.2d 385. There is, here, a sufficiently "strong[] indication of state legislative intent to preempt the particular area[, i.e., firearm purchase and sale,] involved." Id. at 103, 299 A.2d 385.
These approaches and principles apply to the outcome of this case also because the State's laws governing licensing and regulation of firearms have been greatly expanded in both scope and subject matter since Chester was decided. See N.J.S.A. 2C:58-1 to -18. See also Mack Paramus Co. v. Mayor and Council of the Borough of Paramus, 103 N.J. 564, 576-77, 511 A.2d 1179 (1986). On that basis, as well, we come to the inescapable conclusion that the reach of the Home Rule Act provision of N.J.S.A. 40:48-1(18) in this subject matter area has been concomitantly narrowed. See ibid.
We do not reflect generally upon the ability of a single municipality to institute effective handgun control, and we do not address the wisdom of the regulatory standard Jersey City has chosen to enact. We hold, simply, for substantially the same reasons articulated by Judge Gallipoli in ruling on the preemption issue, that the municipality has exceeded the scope of its authority.
Having determined that the ordinance is invalid by reason of State preemption doctrine, we need not address the equal protection or vagueness issues posed by plaintiffs in their challenge, nor any other ground articulated by the trial court in its ruling.
Affirmed.