[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Modern Cigarette, Inc., is licensed by the State to distribute cigarettes through vending machines. On May 13, 1998, the defendant Town of Orange passed an ordinance, effective July 1, 1998, which included, inter alia,[1] the provision that "[n]o person shall dispense or cause to be CT Page 11100 dispensed cigarettes, tobacco or smokeless tobacco products from vending machines at any location within the Town of Orange." The ordinance had the effect of putting the plaintiff out of business in that town, and the plaintiff brought this action against the town and certain of its officials seeking damages[2] and a declaratory judgment declaring the ordinance invalid. The court, Pittman J., granted a motion brought by the State of Connecticut to intervene as a defendant, and all of the defendants are united in their contention that the ordinance is valid in every respect.
The parties have entered into a written stipulation regarding most of the factual issues in this case, and certain additional and largely uncontroverted evidence was presented at a hearing held on April 30, 1999. Based on the stipulation and the evidence presented, the court finds the following facts:
The plaintiff, Modem Cigarette, Inc., is a Connecticut corporation authorized to conduct business within the State. Its principal place of business is 1533 State Street in New Haven, and it has been in existence since 1942. Its principal activity is as a vending machine company and distributor of cigarettes through vending machines. Modem Cigarette is a duly licensed distributor as defined by Gen. Stats. § 12-285 (4).
Gen. Stats. §§ 53-344 and 53-344a make it unlawful for any person to sell, give or distribute tobacco to minors. Gen. Stats. § 12-289a prohibits the placement of vending machines in locations other than "(1) an area, facility or business which is accessible only to adults or (2) an area, facility or business permitted under Chapter 545 if the area, facility or business has a separate area accessible only to adults and the machine is placed in such area." Gen. Stats. § 12-289a further prohibits the placement of a "restricted cigarette vending machine"[3] in any area which is frequented primarily by minors. In addition, Gen. Stats. § 12-289a(h) includes the significant provision that nothing in § 12-289a "shall be construed as limiting a town or municipality from imposing more restrictive conditions on the use of vending machines for the sale of cigarettes."
The Connecticut Department of Revenue Services ("DRS"), along with other state and municipal agencies, enforces state laws regarding cigarette vending machines. Modem Cigarette is required to report an inventory of all cigarette vending machines to DRS. It must also report on a monthly basis all new locations as well as any closed or lost. DRS has promulgated regulations regarding CT Page 11101 cigarette vending machines and is authorized by statute to suspend or revoke, following a hearing, the license of any cigarette distributor for violation of the licensing or regulatory requirements of Chapter 214 of the General Statutes.
Cigarette vending machines have been licensed by the State since at least 1947. See Public Act No. 464, 1947. The plaintiff presently pays an annual fee of $1,000.00 for its license. It has maintained one or more cigarette vending machines in Orange since 1965. At the time of the adoption of the ordinance, the plaintiff maintained just one cigarette vending machine in the town, at the Orange Blossom Cafe, a location it had maintained since 1965. The plaintiff has removed that machine from service in order to comply with the ordinance.
Modem Cigarette has standing to challenge the ordinance and seek injunctive and declaratory relief to the extent that the ordinance bans vending machines. The court finds that it is aggrieved by the enactment of the ordinance.
Cigarettes, of course, can be purchased at numerous locations in Orange, but the Town had only three cigarette vending machines within its borders, including the one owned by the plaintiff, at the time of the enactment of the ordinance. The sale of cigarettes through vending machines constitutes only a small portion of cigarette sales there, and, indeed, sales through vending machines make up only two or three percent of total cigarette sales nationally.
Both the State and the Town have a legitimate interest in the regulation of cigarette vending machines. Connecticut youth, and those in Orange are no exception, have had little difficulty in making illegal purchases of tobacco products from such machines. A 1998 survey commissioned by the State Department of Mental Health and Addiction Services Department, for example, demonstrated that minors were successful in their efforts to purchase cigarettes from a vending machine in six out of every ten attempts. of those
Connecticut junior and senior high school students who acknowledge that they do smoke, many report that they sometimes or often buy their cigarettes from vending machines despite the existence of state laws prohibiting or limiting their access to them. Connecticut minors have even succeeded in illegally purchasing cigarettes from restricted vending machines, which are CT Page 11102 designed to prevent the sale of tobacco to minors by requiring a face-to-face transaction with the operator of the machine. A minor is twice as likely to be able to purchase cigarettes from a vending machine as from a convenience store or other over-the-counter outlet.
The adverse public health effects of tobacco use by minors are not in dispute here. The State has a strong interest in reducing teen tobacco use, both on public health grounds and because continued federal funding depends in part on State success in reducing teenagers' access to tobacco. The ordinance in question was a product of the Town of Orange's concern, based, inter alia, on the data previously mentioned, that teenage smoking is a public health hazard and that vending machines are a prime source of cigarettes for those youths who wish to smoke them.
The plaintiff seeks to have the ordinance declared invalid based on its claims that the ordinance: 1) is preempted by state law; 2) constitutes a taking without just compensation; and 3) violates the plaintiff is substantive right to due process of law. It also argues that if Gen. Stats. § 12-289a(h) is interpreted so as to allow a municipality the power to enact such an ordinance, the state's delegation of power to municipalities is unconstitutionally vague. Despite the language in Gen. Stats. § 12-289a(h) giving municipalities the power to place more restrictive conditions on the use of these machines, which language, at first blush, seems to give Orange the authority that it claims, the court finds the first of these contentions to be dispositive.
"Preemption" by a state occurs when 1) a state law "irreconcilably conflicts with a local ordinance;" or 2) when a statute or regulation is intended to "occupy the entire field" of regulation with respect to a particular matter to the exclusion of local regulations. Shelton v. Commissioner, 193 Conn. 506, 517
(1984); Helicopter Associates v. Stamford, 201 Conn. 700, 705
(1986). A local ordinance is said to conflict impermissibly with state law when it "permits or licenses that which the statute forbids, or prohibits that which the statute authorizes". Aaronv. Conservation Comm'r, 183 Conn. 532, 544 (198 1). Although Gen. Stats. § 12-289a(h) entitles a municipality to place "more restrictive conditions" on the "use" of cigarette vending machines, that very language implies that the machines will continue to be "used" and that outright prohibition of the CT Page 11103 machines by a municipality was not contemplated by the legislature.
Where a municipality seeks remove a right that a state permit confers, the municipality exceeds its powers. Dwyer v. Farrell,193 Conn. 7 (1984). In a determination of whether the state has preempted the field, an ordinance cannot rely on a presumption of validity, and its legality is a matter of statutory interpretation. New Haven Commission of Equal Opportunities v.Yale University, 183 Conn. 495 (1981).
Chapter 214 of the General Statutes includes a fairly elaborate scheme for the taxation and regulation of cigarette sales, including sales through vending machines. Some of its provisions are clearly primarily related to licensing and revenue collection, but others are equally clearly directed at regulating the accessability of these devices to minors.
All distributors and dealers of cigarettes are required to be licensed, Gen. Stats. § 12-286. and the licensing of those who distribute their product through vending machines is specifically covered by Gen. Stats. § 12-285 (4). The restrictions on vending machine sales provided by state legislation include, inter alia, the requirement that each cigarette distributor and dealer post at each point of sale, including cigarette vending machines, a notice that the sale of tobacco products to persons under 18 years of age and the purchase of tobacco products by persons under 18 years of age are prohibited. Id. § 12-286a. Section 12-289a also prohibits the placement of cigarette vending machines in an area, facility or business which is frequented by minors. Gen. Stats. §12-289a(a).[4] Moreover, since July 1, 1998, cigarette vending machines may be placed only in facilities "accessible only to adults" or facilities permitted under the Liquor Control Act that have a "separate area accessible only to adults and the machine is placed in such area." Id. §§ 12-289a(a), (f). The Commissioner of Revenue Services is authorized to impose fines against persons who violate these restrictions and to suspend their operation of cigarette vending machines for a period of one year. Id. § 12-295a(d).
In short, the State Legislature has itself placed a variety of conditions on the use of cigarette vending machines in ways that have the effect of restricting their ability to generate revenue for their owners while nonetheless permitting their CT Page 11104 continued operation. Indeed, these restrictions have been systematically increased over the years in ways that reflect the State's legitimate concern that such machines are an important source of tobacco products illegally obtained by minors. Nowhere in Chapter 214, however, is there any suggestion that the State of Connecticut has either contemplated prohibiting such machines altogether or that it has ceded that authority to its municipalities.
Our Supreme Court has noted, in connection with efforts to regulate handgun sales, that "[a]lthough the statutory pattern evinces a legislative intent to regulate the flow of handgun sales and restrict the right to sell to those establishing the requisite qualifications, it is also clear that the General Assembly anticipated that persons meeting those qualifications . . . would be permitted to sell at retail a pistol or revolver. The legislature has struck a balance between totally unregulated sales and a complete ban on sales of handguns at retail." Dwyer, supra, 193 Conn. at 13. The same may be said for its present approach to sales of cigarettes through vending machines. Vendors who comply with the state's conditions, as well as any conditions established by municipalities in accordance with § 12-289a(h), may continue to use their machines to sell cigarettes.
It is apparent from the undisputed evidence at trial that access to tobacco by minors, and specifically the access to tobacco by minors through cigarette vending machines, is a legitimate statewide concern, albeit one shared by municipalities such as the Town of Orange. This state concern has been demonstrated in a variety of ways, including not only the State's comprehensive statutes on vending machine licensing and placement, but also by its statewide youth sting operations, its efforts to comply with federal mandates to reduce teen access to tobacco, and its employment of full time employees to achieve these state goals. It is also undisputed that while Orange shares these concerns, it has had no particular local problems regarding teen access to tobacco that are significantly different from those of any other municipality. "[A local ordinance] . . . cannot overturn a public policy evidenced in long-continued legislation over a subject statewide in its range . . . This is not the case of the ordinance speaking where the statute is silent. It is a case of a direct conflict between the state statutes and the town ordinance. They are irreconcilably inconsistent with one another. The ordinance must yield." Shelton v. City of Shelton, CT Page 11105111 Conn. 433 447 (1930).[5]
The defendants correctly point out that a basic problem with cigarette vending machines is that they cannot distinguish the age of the person using them. They dispense their product indiscriminately to any and all who deposit coins, including minors. See, Illinois Cigarette Service Co. v. City of Chicago,89 F.2d 610, 613 (7th Cir. 1937). Given this fact and the defendants' legitimate concern that current laws have proved ineffective in preventing minors from purchasing cigarettes from such machines, it was entirely reasonable to consider whether an outright ban on cigarette vending machines would make it more difficult for minors to obtain cigarettes and thereby further their goal of promoting their welfare. See, e.g. IllinoisCigarette Service Co. v. City of Chicago, supra (concluding that a ban on cigarette vending machines was "a reasonable attempt to effectuate an accomplishment of the city's declared purpose" of preventing the purchase of cigarettes by minors); General FoodVending Inc. v. Town of Westfield, 672 A.2d 760. 764 (N.J.Super. 1995)("total ban on cigarette machines unequivocally passes the rational basis test"); Take Five Vending, Ltd. v. Town ofProvincetown, 615 N.E.2d 576, 581 (Mass. 1993) (ban on cigarette vending machines "rationally furthers a legitimate state interest"); Brennan v. City of Seattle, 276 f). 886, 887 (Wash. 1927) (banon cigarette vending machines "does not violate any right guaranteed by the state or Federal constitution"). Although the notion of a total ban may be rational, however, and the intentions of its architects honorable, the problem is that if such a ban is presently beyond the scope of the authority granted to municipalities, including Orange, by Gen. Stats. §12-289a(h) or any other statutory source, the ordinance cannot stand.
Thus, the court has had to examine the language of Gen. Stats. § 12-289a(h) to determine the precise nature of the power has been delegated to municipalities with respect to the regulation of cigarette vending. In actuality, the language of that statute is quite clear. It authorizes municipalities to impose conditions on the "use" of such machines "for the sale of cigarettes", including conditions that are more restrictive than those imposed by the State. Where the legislature has expressly contemplated that the machines will be used, as it has done in Gen. Stats. § 12-289a(h), there is no room for an interpretation of the phrase "more restrictive conditions" that includes making the use of those machines illegal. CT Page 11106
The words of a statute are to be given their common and ordinary meaning, unless a contrary intent is clearly expressed.Marone v. Lensink, 207 Conn. 296, 303, 221 A.2d 157 (1988). If the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intention of the legislature and there is no room for judicial construction. Mazurv. Blum, 184 Conn. 116, 118-119, 441 A.2d 65 (1981); Aaron v.Conservation Commission, 183 Conn. 532, 548, 441 A.2d 30 (1981);Doe v. Manson, 183 Conn. 183; Johnson v. Manson, 196 Conn. 309
(1985). By expressly mentioning what municipalities can regulate, the legislature also implicitly states what municipalities cannot regulate. Capalbo v. Planning Zoning Bd of Appeal,108 Conn. 480, 491 (1988). When a statute creates an exception to a general rule, it is to be construed strictly and its language is not to be extended beyond its evident intent. Staples v. Palten,214 Conn. 195 (1990); Bickart v. Sanditz, 105 Conn. 766 (1927).
Prohibition of an activity is by definition inconsistent with the concept of placing conditions on such an activity for the reason that in ordinary usage, a "condition" is imposed as a prerequisite to the carrying out of some act. A "condition" is something essential to the appearance or occurrence of something else; prerequisite." See, Merriam Webster's Collegiate Dictionary(Tenth Edition) (1996). "Use" is defined as "the act or practice of employing something . . . the privilege or benefit of using something." Id. The Orange ordinance does not establish a "prerequisite" for the employment of these machines or the privilege or benefit of using them; it simply forbids them in their entirety. Such a prohibition, by definition, therefore can never be a "condition" on "use"
In striking down the New Haven ordinance restricting the retail sales of handguns, our Supreme Court noted that the "state permit is rendered an illusory right because a casual seller residing in a nonbusiness zone can have no real hope of ever conforming to the local ordinance." Dwyer v. Farrell, supra,193 Conn. at 14. The defendants argue that in Bauer v. WasteManagement of Connecticut, Inc., 234 Conn. 221 (1995), the court did uphold a local ordinance establishing a 90-foot height limit for landfills despite a state statute specifying a 190-foot height limit. There, however, the relevant state statute provided that "nothing in this chapter . . . shall be construed to limit the right of any local governing body to regulate, through zoning, land usage for solid waste disposal." Id. at 233. The CT Page 11107 court held that the local ordinance was not preempted by the state law because it merely went further than the state statute but did not forbid what "the permit issued pursuant to the state statute expressly authorizes." Id. at 236. In contrast, this ordinance does not merely go further than the statute, but indeed does "forbid what the [state] permit expressly authorizes." Id. It prohibits entirely all cigarette vending machine sales, despite the fact that Chapter 214 expressly authorizes and licenses them.
Courts in other states have struck down municipal ordinances banning cigarette vending machines in the context of state statutes similar to those in Connecticut. In AutomaticRefreshment Service v. City of Cincinnati, 92 Ohio App.3d 284,634 N.E.2d 1053 (Ohio App. 1993), the court held that the local ordinance banning cigarette vending machines was preempted because it forbade that which the state permittect In TDRowe/Vend-A-Matic v. City of Troy, No. 96-524149-CZ, slip op. at 4 (Mich. Cir. Ct., county of Oakland, July 29, 1996), the court enjoined enforcement of a municipal ordinance banning cigarette vending machines on the grounds that, inter alia, the ordinance would "prohibit what the state permits").
Bravo Vending v. City of Rancho Mirage, 16 Cal.App.4th 383
(1993) upheld a local ordinance banning cigarette vending machines. It did so, however, because, unlike the situation in Connecticut, the court found no state preemption of the field. "[N]owhere [in the state law] is the use of vending machines to sell cigarettes expressly authorized." Id. at 397. In Take FiveVending, Ltd. v. Town of Provincetown, 415 Mass. 741,615 N.E.2d 576, 580 (1993), the court's decision upholding an ordinance banning cigarette vending machine sales turned on the fact that the purpose of the state statute was "the accurate collection of the cigarette excise tax by the Commonwealth." While the state had preempted the field of taxation of cigarette sales, the legislature had not "expressed any intent to preempt local prohibition or regulation of the siting of cigarette vending machines for public health or other reasons." Id. Chapter 214, however, provides for both the raising of revenue and the restriction of access to tobacco by minors and includes numerous provisions specifically related to each of these purposes. Moreover, in expressly authorizing municipalities only to place conditions on the "use" of these machines, it implicitly denies them the right to ban them entirely. Expressio unius est exclusioalterius.
CT Page 11108
In C.I.C. Corp. v. East Brunswick Township, 266 N.J. Super. 1,628 A.2d 753, affd 135 N.J. 121, 638 A.2d 812 (1993), the New Jersey Supreme Court upheld a municipal ordinance banning cigarette vending machines because it found that "the purpose of the [ordinance and the state law] are quite different." C.I.C.Corp. v. Township of East Brunswick, at 757. Concluding that the state statutes were "simply not an expression of comprehensive or exhaustive regulation of the use of vending machines", it observed that their purposes were only "to impose and prescribe a method of collection of a tax on the sale of cigarettes; to provide for the licensing of distributors, dealers and consumers; to provide for the control of the transportation of cigarettes in and through the State; and to provide penalties for violation of the Act . . . [citations omitted] . . . [and] . . . to prohibit the sale of cigarettes by a wholesaler or retailer by unfair practices below cost. . . . [citations omitted] . . . "Taken together, these provisions manifest an intent "to deal with a statewide problem and to protect the public from smuggling and deceptive trade practices as well as to regulate by licensing those who distribute and sell cigarettes and impose a tax."628 A.2d at 757. In contrast, the purpose of the ordinance was "to prevent the sale of cigarettes to minors; the focus is on the purchasers, not the sellers of cigarettes." Id., at 758.
No such divergence of purpose exists between the Town of Orange's Ordinance and Chapter 214. Although the state statutes also deal with licensing and revenue, both the statutes and the ordinance indisputably share the purpose of reducing the consumption of tobacco by minors. The approach taken by the state in carrying out this purpose has been to restrict, but not to ban. Although the State has given municipalities some authority with respect to placing conditions on the use of the machines, it has preempted the field with respect to the issue of prohibition.
Whether an ordinance conflicts with a statute is determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of state objectives. Aaron v. Conservation Comm'n,183 Conn. 532 (1981). As a creation of the state, a municipality has no inherent powers of its own. It possesses only such rights and powers that have been granted expressly to it by the state, or that are necessary to discharge its duties and carry out its objectives and purposes. Blue Sky Bar v. Stratford, 203 Conn. 14,19 (1987); Bencivenga v. Milford, 183 Conn. 168, 173 (1981); NewCT Page 11109Haven Water Company v. New Haven, 152 Conn. 563, 566 (1965); municipalities have no inherent legislative authority, and can wield only those powers expressly granted to them by the legislature. Proprosky v. Shea, 21 Conn. App. 351, 355 (1990);Simons v. Canty, 195 Conn. 524, 530 (1985). Further, an enumeration of powers in a statute is uniformly held to forbid the things not enumerated. Capalbo v. PZ Board of Appeals,208 Conn. 480 (1988). State ex rel. Barlow v. Kaminsky,144 Conn. 612, 620 (1957); Delegation of authority is therefore narrowly construed. Simons v. Canty, 195 Conn. 524, 530 (1985).
The court assumes, without having to decide the question, that if the Legislature had meant to delegate the authority to ban cigarette vending machines to municipalities, it could have done so. It has, for example, devised a scheme to allow a municipality to prohibit the sale of alcoholic beverages (Gen. Stats. § 30-9 through § 30-13). This scheme provides clear and express prohibitory language (§ 30-9), municipal ballot details for a vote on prohibition (§ 30-10), a form of ballot for such a vote (§ 30-11), and the specific voiding of state licenses to sell alcohol within a town (§ 30-12). California is a state which has specifically delegated the authority to prohibit vending machine sales of tobacco. Cal. Stat. § 22960 (1998). It also regulates the licensing and use of cigarette vending machines, but explicitly does not "preempt of otherwise prohibit the adoption of a local standard that further restricts access to and reduces the availability of cigarettes or tobacco products from vending machines or devices or that imposes acomplete ban on the sale of cigarettes or tobacco products fromvending machines or devices." (Emphasis added). The first part of this provision is very much like the authority granted to municipalities by Gen. Stats. § 12-289a(h). The second part, which the defendants would like to have the court read into our statute, is qualitatively different and is conspicuously absent from our laws.
The defendants also argue, however, that independent of the authority granted to municipalities by § 12-289a(h), the concept of Home Rule gives municipalities inherent authority as a part of their police powers to enact ordinances that promote the public welfare of their people. (See Gen. Stats. § 7-148) They rely in part on Blue Sky Bar v. Stratford, 204 Conn. 14
(1987), a case in which a municipal ordinance prohibiting ice cream vending from motor vehicles was upheld by our Supreme Court. They also cite Blue Sky for the proposition that the power CT Page 11110 to restrict (or regulate) includes the power to ban.
Indeed, in Blue Sky, our Supreme Court did note that it "requires no citation of authority to say that regulation may in many instances result in prohibition. The question is whether the result is reached in a reasonable manner and is necessary for the public welfare." 203 Conn. at 20. The Court rejected the claim that a local ordinance prohibiting street vending from motor vehicles was preempted by a state statute that authorized municipalities to regulate such activities. Unlike this case, however, the state statutes involved in Blue Sky did not themselves purport to regulate the activities of ice cream vendors. Instead, the legislature granted municipalities the authority "to make reasonable ordinances with reference to the vending or hawking upon its public streets of any goods, wares or other merchandise. . . ." Id. at 17.
The case did not in fact reach the issue of whether home rule powers authorize a municipality to prohibit any and all vending on public streets: "We need not decide the issue of whether §7-14 8(c)(7)(H)(IV) authorizes a municipality to prohibit outright any and all vending on public streets . . . Id. At 470". Instead, the court upheld the ordinance because it did not totally ban vendors from selling ice cream in the city:
 "The plaintiffs therefore are not absolutely forbidden from vending their products; rather, the effect of the ordinance is to regulate the method by which the plaintiff may vend their products". While it is true that the ordinance limits the plaintiffs in the manner of merchandising their products, there is nothing in the ordinance that forbids the plaintiffs from selling their products via bicycle, pushcart or other non motor vehicle. Id. at 471 (emphasis added).
The defendants also attempt use their home rule argument to have the court uphold the ordinance on the basis of the decision in Beacon Falls v. Posick, 212 Conn. 570. 583 (1989). There the Supreme Court, in reversing the Appellate Court, held that "when a statute authorizes a municipality to regulate a certain activity, a prohibition of that activity will be valid if it is rationally related to the protection of the community's public health, safety and general welfare." Because the parties have stipulated that the Town has an interest in the protection of the community's public health, safety and general welfare, and because the evidence supports the rational conclusion that a ban CT Page 11111 on cigarette vending machines could promote those goals, the defendants argue that the ordinance must be found to be valid.
The problem with the defendants' reliance on Beacon Falls is that in that case, the local zoning regulations did not conflict with the state statute, in which the "legislature intended only to prevent zoning authority to the extent that it conflicted with the operation of a [Connecticut Resources Recovery Act] facility on property owned by the CRRA. . . Id. at 578. The statutes preempted the field with respect to such facilities, but they did not purport to regulate privately owned facilities. In contrast, the present ordinance has not been enacted in such a vacuum, but rather in the context of a state statute that specifically authorizes the use of these machines and provides for conditions on their continued use. Rather than bolstering the defendants' arguments, Beacon Falls undermines them. The defendants' efforts to find support for the Orange ordinance beyond Gen. Stats. §12-289a(h) is thus unpersuasive.
In short, if the State is concerned enough about cigarette vending machine sales to seek their outright ban, it will have to accomplish this goal through means other than merely allowing municipalities to place additional "conditions" on the "use" of such machines. Gen. Stats. § 12-289a(h) represents a delegation of only limited authority to the State's municipalities; its terms do not contemplate delegation of the authority to prohibit sales through these machines entirely. The ordinance can not stand, and ajudgment will enter in favor of the plaintiff declaring the ordinance invalid.
Because the court has found both that the field of regulation of sales of cigarettes through vending machines has been preempted by the state and that the state has not delegated to municipalities the power to ban such machines from within their borders in their entirety, it is unnecessary, and inappropriate, to consider the plaintiffs claims that the Orange ordinance constitutes an unconstitutional "taking" without just compensation, in violation of both the United States and Connecticut Constitutions; that the ordinance unreasonably and unconstitutionally singles out the vending business and deprives it of due process of law; or that the delegation of authority contained in § 12-289a(h) is unconstitutionally vague. See,State v. Torres, 230 Conn. 372, 382 (1993).
This decision should not necessarily be construed as a CT Page 11112 negative commentary on the value of the prohibition of sales of cigarettes from vending machines as a part of the effort to curb tobacco consumption by minors. Such policy considerations are not the court's province. The issue before the court is not whether prohibition is wise or valuable, but rather whether it is legal under circumstances where the state has reserved to itself the function not only of licensing and taxing cigarette vending machines but also of regulating their siting and usage so as to limit their accessibility to minors. The limited grant to municipalities to impose conditions on use even more restrictive than those enacted by the legislature can be read neither as a wholesale ceding to municipalities of the power to eliminate vending machine licensing and taxation as a source of state revenue nor as a total abandonment of the state's authority to regulate the use of these machines.
Judgment will therefore enter in favor of the plaintiff declaring Town of Orange's ordinance invalid.
Jonathan E. Silbert, Judge