970 A.2d 1092

IN THE MATTER OF THE APPLICATION OF J.D. TO APPEAL THE DENIAL OF AN APPLICATION FOR A PURCHASER IDENTIFICATION CARD, AND TO APPEAL THE DENIAL OF AN APPLICATION TO PURCHASE A HANDGUN.

Superior Court of New Jersey
Law Division Camden County

Decided February 2, 2009.

318

*J.D.*, pro se.

*Kathleen M. Delaney,* Assistant Camden County Prosecutor, for the State (*Warren W. Faulk,* Camden County Prosecutor).

NATAL, J.S.C.

This is an appeal filed by the applicant, J.D., appearing *pro se,* from the denial of his application for a firearms purchaser identification card and a permit for him to purchase a handgun by the Voorhees Township Police Department.

On November 13, 2008, the applicant applied for a firearms identification card and a permit to purchase a handgun with the Voorhees Police Department. Question #22 of the application asks, "Have you ever been confined or committed to a mental institution or hospital for treatment or observation of a mental or psychiatric condition on a temporary, interim or permanent basis?" Question #25 of the application asks, "Have you ever been attended, treated or observed by any doctor or psychiatrist or at any hospital or mental institution on an in-patient or outpatient basis for any mental or psychiatric conditions?" Applicant answered questions 22 and 25 in the negative by marking an "X" in the block next to the answer choice "No."

A subsequent investigation by the police department determined that the applicant's mental health history includes an involuntary commitment on September 12, 1983, to Ann Klein/Forensic Hospital. The investigation report also indicates that the applicant told the police he wanted the firearm so that while he was in the wilderness taking pictures, he could protect himself against animals that may try to attack him.

On December 11, 2008, the Voorhees Township police chief disapproved the application for the firearms purchaser identification card and permit to purchase a handgun based on the applicant's mental health history. More specifically, the disapproval letter set forth the reasons for denial as applicant's "Medical, Mental or Alcoholic Background" and "Falsification of Application."

On January 8, 2009, the applicant, through counsel, filed an appeal of the denial of the application, accompanied by an affidavit. In the affidavit, the applicant alleged that he answered "No" to questions 22 and 25, believing he had the right to answer these questions in the negative. He believed that no records concerning his mental health in 1983 or 1984 existed. The applicant believed that Judge A. Donald Bigley ordered those records expunged in the spring of 1984.

Since 1984, the applicant stated, he has never answered in the affirmative to any application which inquired into his prior mental health or hospitalization. Having answered "no" on other job and health applications, he was never told his answers were inaccurate. Based on these experiences, the applicant believed the information properly had been expunged. Furthermore, the applicant asserts that were it not for this belief, he would have disclosed the past medical events on the firearm application. Thus, the applicant argues the failure to include his correct medical history was not intentional, but rather a mistake.

On January 20, 2009, the applicant asked the court to diligently search its records for the relevant expungement orders. The search of the court records revealed the applicant had filed verified petitions in February 1985 requesting the expungement of: (1) his out-patient treatment and hospitalization; (2) all evidence of his arrest; and (3) the proceedings in connection with his arrest.

In support of these expungement petitions, the applicant alleged that in September 1983 he experienced emotional problems and depression which resulted from being struck by a motor vehicle. These problems culminated in his involuntary commitment to Trenton Psychiatric Hospital from September 12, 1983, to September 28, 1983, when he was transferred to Ancora State Hospital. He remained at Ancora until his discharge on October 19, 1983. He received a diagnosis of schizophreniform disorder.

He continued out-patient care from November 29, 1983, to January 31, 1985, at which time he allegedly was discharged as

fully recovered. On March 29, 1985, Judge Bigley granted orders of expungement of all information relating to the applicant's arrest under *N.J.S.A.* 2C:52-11. On April 9, 1985, Judge Bigley granted orders of expungement of the record of psychiatric hospitalization under *N.J.S.A.* 30:4-80.8.

The issue presented is whether a court, after becoming aware that a firearm applicant has a prior psychiatric diagnosis and commitment which has been expunged, may inquire into whether the applicant has overcome the psychiatric disability ordinarily accompanying the diagnosis. There is no legislation on point.

The search for legislative intent begins with the expungement statute's language and structure. But "[it] is [also] a basic concept of our law in interpreting statutes that the intention [of a statute] emerges from the spirit and policy of a statute, rather than from the literal sense of the particular terms." *In re D. G.*, 162 *N.J.Super.* 404, 408, 392 *A.*2d 1257 (1977) (citation omitted). "In construing the statute the court must look to the overall intent and purpose of the law." *Ibid.*

New Jersey law provides an individual may apply for an order of expungement[1] who has been committed to a mental health institution and who has been discharged upon having recovered. *N.J.S.A.* 30:4-80.8. A similar remedy is available to one who has been arrested but not convicted for certain crimes and offenses. *N.J.S.A.* 2C:52-6(a).

After an expungement hearing, "if no reason appears to the contrary, an order[2] shall be made directing the clerk of the

---

[1] "Expungement" means the extraction and isolation of all records on file within any court, detention or correctional facility, law enforcement or criminal justice agency concerning, among other things, a person's apprehension, arrest, and detention within the criminal justice system. Arrests and commitments are included among documents that qualify as "expunged records." *N.J.S.A.* 2C:52-1; *N.J.S.A.* 30:4-80.11

[2] The applicant believed his records no longer existed. To correct his mistake, an order of expungement as to an arrest triggers a duty for government agencies

court to expunge such commitment from the records of the court . . ." and "the commitment shall be deemed not to have occurred and the petitioner may answer accordingly any question relating to its occurrence." *N.J.S.A.* 30:4–80.9 and 30:4–80.11. A similar remedy is available to one who has been arrested but not convicted for certain crimes and offenses. *N.J.S.A.* 2C:52–11 and 2C:52–15.

The intent of these provisions "is to eliminate any stigmas that might attach to a person who was committed to a psychiatric hospital." *In re D. G., supra,* 162 *N.J.Super.* at 408, 392 *A.*2d 1257. Case law supports the proposition that this remedy satisfies the expectation interests of the individual with respect to society. This is so because this remedy "place[s] petitioner in the same position he was in before the hospitalization and illness occurred, with a view toward eliminating to the greatest possible extent petitioner's exposure to discrimination." *Ibid.* As such, a qualifying individual is entitled to answer under oath that he has never been committed. *Ibid.*

The expungement remedy, however, appears to be in direct conflict with *N.J.S.A.* 2C:58–1 to –19, our state statute relating to firearm ownership. Generally speaking, this "strict regulatory scheme" demonstrates "New Jersey's commitment to firearms safety [as] unrivaled anywhere in the nation . . ." *N.J.S.A.* 2C:58–2.2.

"The Legislature clearly intended to create a complete system of law with respect to firearm regulation. The statute directs all aspects of the application, purchase and sale of firearms. It also requires applicants to undergo intensive 13–point individual inves-

---

to remove all records specified in the order and place them in the control of a designated person. The designated person has the duty, with some exceptions, to seal the records and prevent the information contained in the records from being released, utilized, or referred to for any purpose. The designated person must respond to requests for the expunged information that there is no record information. *N.J.S.A.* 2C:52–15. The physical destruction of hospital records is not authorized. *Application of L.C.,* 153 *N.J.Super.* 517, 380 *A.*2d 308 (1977).

tigations, including criminal background checks, in order to obtain firearm permits." *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Jersey City,* 402 *N.J.Super.* 650, 654, 955 *A.*2d 1003 (App.Div. 2008).

In one of its pertinent sections, the statute prohibits the issuance of a permit to purchase a firearm or a purchaser identification card:

> "to any person who has ever been confined for a mental disorder . . . unless [that person] produces a certificate of a medical doctor or psychiatrist licensed in New Jersey, or other satisfactory proof, that he is no longer suffering from that particular disability in such a manner that would interfere with or handicap him in the handling of firearms. . . ."
>
> *N.J.S.A.* 2C:58-3.

This brings into focus the collision between the expungement remedy and the legislation that governs firearm ownership. In this matter, the police chief determined the application should be denied because the applicant had a history of mental illness and did not answer truthfully questions 22 and 25, thereby falsifying his answers to the application.

By the firearms statute, which requires an applicant to admit to his prior commitment, it seems the applicant falsified his answers. As to the applicant, however, he qualified for the remedy of expungement which would entitle him to state, even under oath, despite the looming penalty of perjury, he has never been hospitalized or committed.

■ Given the magnitude of the remedy, this court finds under these facts, the applicant did not falsify his application when he answered questions 22 and 25 in the negative. He relied on a privilege to which he was entitled, just as he has relied on it in the past without repercussion.

■ The seminal issue, however, is whether a court, after becoming aware that a firearm applicant has a prior psychiatric diagnosis and commitment that has been expunged, may inquire into whether the applicant has overcome the psychiatric disability that would ordinarily accompany the diagnosis. Put differently,

this issue requires a determination of the extent to which the beneficiary of an expungement order can rely on the benefit of the order.

In *Ulinsky v. Avignone*, 148 *N.J.Super.* 250, 252–54, 372 *A.*2d 620 (App.Div.1977), the plaintiff sued for malicious prosecution. The trial court denied a discovery motion for expunged records about the plaintiff's criminal charge which was directly relevant to the plaintiff's suit. After the Superior Court denied the motion on appeal, the Appellate Division reversed the lower court. The panel held the plaintiff put the expunged evidence in issue by bringing the lawsuit for malicious prosecution. *Id.* at 256–57, 372 *A.*2d 620.

The panel acknowledged that expungement is a privilege, which suggests it might fit among the privileges enumerated under *N.J.R.E.* 500 to 533. Just as the evidential privileges may be waived under various circumstances, the expungement privilege may also be waived. *Id.* at 255, 372 *A.*2d 620. Therefore, the panel held the expungement privilege can be waived upon consent of the privilege holder. *Id.* at 256, 372 *A.*2d 620.

The panel struck a balance as to the expungement privilege, stating the "shield of expungement cannot be converted into a sword upon which to impale . . . ." *Id.* at 258, 372 *A.*2d 620. The panel reasoned that "a person whose records are expunged [can] insist upon their inviolability and strict enforcement of the Order of Expungement." *Id.* at 257, 372 *A.*2d 620. The panel determined the same person cannot, however, insist upon their continued unavailability while, at the same time, depriving others of possibly relevant material. *Id.* at 258, 372 *A.*2d 620. The panel determined, ultimately, the plaintiff could either waive his privilege and proceed with litigation, or exercise his privilege and withdraw the complaint.

The *Ulinsky* court analyzed the expungement statutes, including but not limited to *N.J.S.A.* 2A:85–21. This court independently has found that *N.J.S.A.* 30:4–80.11 began as Senate Bill 333. This bill originally did not contain the language that appears in

*N.J.S.A.* 30:4–80.11. *See N.J. Senate Bill 333* (as pre-filed for introduction in the 1976 Session Jan. 13, 1976).

The Senate Institutions, Health, and Welfare Committee amended Senate Bill 333, adding the language now appearing in *N.J.S.A.* 30:4–80.11, intending to mirror *N.J.S.A.* 2A:85–21 with this amendment. This amendment extended the expungement privilege from an individual's arrest followed by a dismissal or acquittal to the commitment in a mental health facility followed by recovery and release. Legislative sources indicate this privilege applied to "applications" or when "providing a personal history." *See N.J. Senate Bill 333* (as amended by the Senate Institutions, Health, and Welfare Committee Mar. 29, 1976):

These sources, however, do not explain the legislative intent with its references to "applications" or "providing a personal history." These legislative materials do not express or imply the scope of the privilege. These sources, for example, do not suggest the privilege is limited to "applications" for employment, insurance, or other similar applications.

■ In light of this legislative ambiguity, and based on the statute's plain text allowing a recovered individual to deny "*any question* relating to its occurrence," courts have interpreted the privilege to apply to oath-bound testimony. Today, *N.J.S.A.* 2C:52–15 incorporates the substance of *N.J.S.A.* 2A:85–21 and 2A:85–17(b). "Statutes are considered to be *in pari materia* when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object." *State v. Crawley,* 187 *N.J.* 440, 453, 901 *A.*2d 924 (2006). The privilege embodied in *N.J.S.A.* 30:4–80.11 mirrors the Title 2C privilege and therefore the two are *in pari materia.*

In *State v. J.R.S.,* 398 *N.J.Super.* 1, 3, 939 *A.*2d 226 (App.Div. 2008), the panel decided an issue relating to the timing of an expungement and pending civil litigation. The defendant was arrested for resisting arrest. After the charge was dismissed, the individual sent a tort claim notice to the State. This informed the

State of the individual's intent to sue. Next, the individual filed an expungement application. After the remedy was granted, he filed a formal complaint with the court. The trial court granted the county prosecutor's discovery motion for disclosure of the expunged evidence.

The Appellate Division reversed, interpreting the provisions of *N.J.S.A.* 2C:52–14(d). That statute authorizes the denial of an expungement application when the "arrest or conviction sought to be expunged is, at the time of hearing, *the subject matter of civil litigation* between the petitioner . . . and the State." *Id.* at 5, 939 *A.*2d 226. The panel distinguished filing notice of a tort claim from the filing of the pleadings, reasoning that litigation commences only upon filing the complaint. *Id.* at 6, 939 *A.*2d 226.

First, the reasoning of the *Ulinsky* court is persuasive. Similar to the *Ulinsky* court, this court recognizes the extent of the expungement privilege. This privilege restores an individual's sense of place in society by removing the stigma of commitment. The privilege applies even if the individual testifies under oath with the specter of perjury as a consequence.

The privilege, however, is not absolute. The holder of the privilege has discretion to determine whether to waive it. In the context of gun ownership, the legislature has crafted a strict regulatory scheme. It protects society, and it protects individuals from themselves. Where, as here, the individual has a prior psychiatric commitment, gun ownership could result in harm to himself or to others. If the applicant wishes to proceed with his application for a gun permit, then he must waive the privilege because government has a duty to determine whether the applicant qualifies lawfully to own a handgun.[3]

Second, as explained above, *N.J.S.A.* 30:4–80.11 parallels *N J.S.A.* 2C:52–15. *N.J.S.A.* 30:4–80.8 to 80.11 contains no provision, however, that is analogous to *N.J.S.A.* 2C:52–14, which enumer-

---

[3] *See N.J. Const.* art. I, ¶ 2 ("Government is instituted for the protection, security, and benefit of the people. . . .").

ates grounds for denial of an expungement application. To fill in the gap, the reasoning in *J.R.S., supra,* 398 *N.J.Super.* 1, 939 *A.*2d 226, is persuasive.

Based on *J.R.S.,* the crux of the distinction between filing notice with an adversary and filing the complaint in court is this: Filing notice merely demonstrates a subjective intent to commence litigation, whereas filing a complaint actually begins the lawsuit. Similar to filing notice, a gun applicant merely demonstrates a subjective intent to obtain a permit when he enters the police station to apply and secures the application. But submitting the application, as well as the subsequent appeal, are tantamount to filing a complaint in court. Just as filing a complaint in court triggers governmental machinery to handle the forthcoming litigation, submitting the application to the police causes the government to initiate an investigation it would not have undertaken otherwise.

 It follows, therefore, that an application for a gun permit is tantamount to filing a civil complaint, and the privilege-holder must make a choice. He may apply for the permit, but only upon waiver of the privilege. This allows the government to investigate the applicant's medical history. Alternatively, he may exercise his privilege by withdrawing the application for a firearms permit. The choice is entirely at his discretion.

As to the threshold question, whether the court may inquire into the subject matter of the expunged evidence, this reasoning clearly authorizes it. The medical history is discoverable to the court so long as the privilege-holder provides a waiver. Similar to the plaintiff in *Ulinsky* who put his history in issue when he filed suit, the applicant here put his psychiatric history in issue when he applied for the gun permit. This constructive waiver became an actual waiver when he asked this court diligently to search court records for the expungement order on January 20, 2009. The court found the expungement orders. These records, however, did not include a medical certificate from his psychiatrist, or any other proof that he no longer suffers from schizophreniform disorder.

Since the police chief's search found the record of the applicant's mental illness commitment, this indicates that the order was never perfected by the applicant or his attorney by serving the order upon the mental health facilities. In addition, no proof of service of the order was found in the clerk's records.

For the foregoing reasons, the appeal of the denial of the application for a firearms purchaser identification card and a permit to purchase a handgun by applicant is denied.

If the applicant chooses to reapply, he may do so with the Voorhees Police Department. Reapplication, however, will require the applicant to waive the privilege of expungement. Therefore, he will be required to submit to the police both a new application and a certificate from a medical doctor or psychiatrist licensed in New Jersey, or other satisfactory proof that he is no longer suffering from schizophreniform disorder or any other disorder in such a manner that would interfere with or handicap him in the handling of firearms.